**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KEYSTONE SPORTS AND ENTERTAINMENT LLC, et al. | Case No. 2:21-cv-00609-PBT |
| Plaintiffs, | |
| v. | Hon. District Judge Petrese B. Tucker |
| FEDERAL INSURANCE COMPANY, | |
| Defendant. | |

**DEFENDANT FEDERAL INSURANCE COMPANY'S BRIEF IN SUPPORT**
**OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

David Newmann (No. 82401)
david.newmann@hoganlovells.com
Jasmeet K. Ahuja (No. 322093)
jasmeet.ahuja@hoganlovells.com
Jason M. Russell (No. 325963)
jason.russell@hoganlovells.com
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267) 675-4600
Fax: (267) 675-4601

*Attorneys for Defendant Federal Insurance Company*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      Preliminary Statement.................................................................................1

II.     Statement of Facts......................................................................................2

    A.      The Policy ......................................................................................2

    B.      Procedural Background....................................................................5

    C.      Plaintiffs' First Amended Complaint................................................6

III.    Pleading Standards and Rules of Policy Interpretation....................................8

    A.      Standard of Review.........................................................................8

    B.      Principles of Pennsylvania Insurance Contract Interpretation...............9

IV.     Argument .................................................................................................10

    A.      The Policy's coverages require physical alteration of property............10

    B.      Plaintiffs do not and cannot allege direct physical loss or damage. ....................14

    C.      The absence of a virus exclusion is irrelevant. ...................................21

    D.      Plaintiffs' bad faith claim fails because Federal properly denied coverage. .........24

V.      Conclusion ..............................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*,
  21 F.4th 216 (2d Cir. 2021) ...................................................13

*401 Fourth St., Inc. v. Invs. Ins. Grp.*,
  879 A.2d 166 (Pa. 2005) .........................................................9

*4431, Inc. v. Cincinnati Ins. Comp.*,
  504 F. Supp. 3d 368 (E.D. Pa. 2020) (Leeson, J.) .....................12, 14, 21

*Advent Home Mortg. Corp. v. Hartford Cas. Ins. Co.*,
  No. 06-1582, 2006 WL 7121792 (E.D. Pa. Aug. 14, 2006) ...................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................8

*Boscov's Dep't Store, Inc. v. Am. Guarantee & Liab. Ins. Co.*,
  546 F. Supp. 3d 354 (E.D. Pa. 2021) ..................................11, 19, 22, 24

*Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*,
  499 F. Supp. 3d 95 (E.D. Pa. 2020) ...................................12, 14

*Brown Jug, Inc. v. Cincinnati Ins. Co.*,
  27 F.4th 398 (6th Cir. 2022) ...................................................18

*Bryan Bros. Inc. v. Cont'l Cas. Co.*,
  660 F.3d 827 (4th Cir. 2011) ...................................................21

*Charter Oak Ins. Co. v. Maglio Fresh Food*,
  979 F. Supp. 2d 581 (E.D. Pa. 2013) .........................................9

*Chester Cty. Sports Arena v. Cincinnati Specialty Underwriters Ins. Co.*,
  530 F. Supp. 3d 546 (E.D. Pa. 2021) ..................................12, 14, 20

*Classic Design Fine Art, Inc. v. Lititz Mut. Ins. Co.*,
  2021 Phila. Ct. Com. Pl. LEXIS 34 (Dec. 14, 2021) .........................13

*Clear Hearing Sols., LLC v. Cont'l Cas. Co.*,
  513 F. Supp. 3d 566 (E.D. Pa. 2021) .........................................24

*Delaware Valley Mgmt., LLC v. Cont'l Cas. Co.*,
  No. 2:20-cv-4309, 2021 WL 5235277 (E.D. Pa. Nov. 10, 2021) ............. *passim*

ii

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Dunkin' Donuts Franchised Rests., LLC v. Claudia I, LLC*,
   998 F. Supp. 2d 383 (E.D. Pa. 2014) ........................................................................6

*Ferrer v. Trs. of the Univ. of Pa.*,
   825 A.2d 591 (Pa. 2002) ..........................................................................................22

*First & Stewart Hotel Owner, LLC v. Fireman's Fund Ins. Co.*,
   No. 2:21-cv-00344-BJR, 2021 WL 3109724 (W.D. Wash. July 22, 2021) ...............16, 17, 18

*Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*,
   516 F. Supp. 3d 450 (E.D. Pa. 2021 ........................................................................19

*Frederick Mut. Ins. Co. v. Hall*,
   752 F. App'x 115 (3d Cir. 2018) ..............................................................................23

*Gilreath Fam. & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*,
   No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021) ................................14

*Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*,
   21 F.4th 704 (10th Cir. Dec. 21, 2021) ...................................................................13

*Greenwood Racing Inc. v. Am. Guarantee & Liab. Ins. Co.*,
   No. CV 21-1682, 2021 WL 5050087 (E.D. Pa. Nov. 1, 2021)................................8

*Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*,
   539 F. Supp. 3d 409 (E.D. Pa. 2021) .................................................................13, 20

*Hedges v. United States*,
   404 F.3d 744 (3d Cir. 2005)......................................................................................9

*HILLBRO LLC v. Oregon Mut. Ins. Co.*,
   No. 3:21-CV-00382-HZ, 2021 WL 4071864 (D. Or. Sept. 7, 2021).....................18

*Indep. Rest. Grp. v. Certain Underwriters at Lloyd's*,
   513 F. Supp. 3d 525 (E.D. Pa. 2021) (Kenney, J.) ....................................... *passim*

*Isaac's at Spring Ridge, LLP v. MMG Ins. Co.*,
   2021 WL 1650789 (Pa. Com. Pl. Mar. 2, 2021)....................................................13

*Isaac's Deli, Inc. v. State Auto Property & Casualty Insurance Co.*,
   539 F. Supp. 3d 424 (E.D. Pa. 2021) .........................................................13, 14, 23

*JMR Holdings, LLC v. Valley Forge Ins. Co.*,
   No. 2:21-cv-00839-JDW, 2021 WL 3722264 (E.D. Pa. Aug. 23, 2021) ...........12, 14

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Johnson v. Hartford Fin. Servs. Grp.*,
   510 F.Supp.3d 1326 (N.D. Ga. 2021) ......................................................................16

*Kessler Dental Assocs., P.C. v. Dentists Ins. Co.*,
   505 F. Supp. 3d 474 (E.D. Pa. 2020) .......................................................................19

*Kvaerner Metals Div. v. Com. Union Ins. Co.*,
   908 A.2d 888 (Pa. 2006) ............................................................................................9

*KWB Enters., Inc. v. Nationwide Gen. Ins. Co.*,
   No. 20-CV-5195, 2022 WL 282533 (E.D. Pa. Jan. 31, 2022) .................................15

*Lamacar Inc. v. Cincinnati Cas. Co.*,
   No. 3:21-CV-1396-S, 2022 WL 227162 (N.D. Tex. Jan. 26, 2022) ........................18

*Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*,
   537 F. Supp. 3d 780 (E.D. Pa. 2021) .....................................................................8, 9

*Lehigh Valley Baseball, LP v. Phila. Indem. Ins. Co.*,
   No. 00958, 2021 WL 3029899 (Pa. Com. Pl. June 17, 2021) .................................13

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*,
   418 F.3d 330 (3d Cir. 2005)......................................................................................22

*Mark I Restoration SVC v. Assurance Co. of Am.*,
   248 F. Supp. 2d 397 (E.D. Pa. 2003), *aff'd*, 112 F. App'x 153 (3d Cir. 2004) ......24

*Moody v. Hartford Fin. Grp. Inc.*,
   513 F. Supp. 3d 496 (E.D. Pa. 2021) ..........................................................15, 17, 19

*Motorists Mutual Insurance Co. v. Hardinger*,
   131 F. App'x. 823 (3d. Cir. 2005) ...........................................................................10

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
   487 F. Supp. 3d 834 (N.D. Cal. 2020), *aff'd*, 15 F.4th 885 (9th Cir. 2021) ...........20

*Nationwide Mut. Ins. Co. v. Brophy*,
   371 F. App'x 302 (3d Cir. 2010) ..............................................................................22

*Newchops Rest. Comcast LLC v. Admiral Indem. Co.*,
   507 F. Supp. 3d 616 (E.D. Pa. 2020) ....................................................9, 12, 14, 23

*Northwell Health, Inc. v. Lexington Ins. Co.*,
   No. 21-CV-1104 (JSR), 2021 WL 3139991 (S.D.N.Y. July 26, 2021)....................18

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*,
    2 F.4th 1141 (8th Cir. 2021) ................................................13

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
    491 F. Supp. 3d 738 (S.D. Cal. 2020) ................................16

*Parker v. Cincinnati Ins. Co.*,
    No. 5:21-CV-44-BJB, 2022 WL 614921 (W.D. Ky. Mar. 2, 2022) ........................19

*Paul Glat MD, P.C. v. Nationwide Mut. Ins. Co.*,
    531 F. Supp. 3d 908 (E.D. Pa. 2021) ................................22

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008).................................................8

*Port Authority of New York & New Jersey v. Affiliated FM Insurance Co.*,
    311 F.3d 226 (3d. Cir. 2002)...........................................10, 11

*Reliance Ins. Co. v. Moessner*,
    121 F.3d 895 (3d Cir. 1997).................................................9

*Ridley Park Fitness, LLC v. Philadelphia Indem. Ins. Co.*,
    No. 01093, 2020 WL 8613467 (Pa. Com. Pl. Aug. 31, 2020)................................20

*Round Guys Brewing Co. v. Cincinnati Ins. Co.*
    No. 20-6252, 2021 WL 4306027 (E.D. Pa. Sept. 22, 2021) ...........................11, 21

*Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*,
    20 F.4th 327 (7th Cir. 2021) ................................18, 19

*Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*,
    No. 21-1186, 2021 WL 5833525 (7th Cir. Dec. 9, 2021).......................13

*Santo's Italian Café, LLC v. Acuity Ins. Co.*,
    15 F.4th 398 (6th Cir. 2021) ................................13

*Selane Prod., Inc. v. Cont'l Cas. Co.*,
    No. 21-55123, 2021 WL 4496471 (9th Cir. Oct. 1, 2021) ....................13

*Southerland v. St. Croix Taxicab Ass'n*,
    315 F.2d 364 (3d Cir. 1963)..................................................6

*Spector Gadon Rosen Vinci P.C. v. Valley Forge Ins. Co.*,
    2020 WL 10458593 (Pa. Com. Pl. May 01, 2020) ..................13

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Star Buick GMC v. Sentry Ins. Grp.*,
541 F. Supp. 3d 582 (E.D. Pa. 2021) ...............................................................6, 8, 22

*State Farm Fire & Cas. Co. v. Est. of Mehlman*,
589 F.3d 105 (3d Cir. 2009)................................................................................9

*Studio 417, Inc. v. Cincinnati Ins. Co.*,
478 F. Supp. 3d 794 (W.D. Mo. 2020) ..................................................................19

*Taps & Bourbon on Terrace, LLC v. Underwriters at Lloyds London*,
No. 00375, 2020 WL 6380449 (Pa. Com. Pl. Oct. 26, 2020)................................20

*Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*,
22 F.4th 450 (5th Cir. 2022) ............................................................................13

*Tria WS LLC v. Am. Auto. Ins. Co.*,
530 F. Supp. 3d 533 (E.D. Pa. 2021) .......................................................12, 13, 14

*Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*,
513 F. Supp. 3d 549 (E.D. Pa. 2021) ...................................................................24

*Uncork & Create LLC v. Cincinnati Ins. Co.*,
498 F. Supp. 3d 878 (S.D. W. Va. 2020) .............................................................16

*Uncork & Create LLC v. Cincinnati Ins. Co.*,
No. 21-1311, 2022 WL 662986 (4th Cir. Mar. 7, 2022).........................................13

*Unitrin Direct Ins. Co. v. Esposito*,
751 F. App'x 213 (3d Cir. 2018) ........................................................................21

*Venezie Sporting Goods, LLC v. Allied Ins. Co. of Am.*,
2021 WL 5368915 (Pa. Com. Pl. May 20, 2021) ..................................................13

*Wehrenberg v. Metro. Prop. & Cas. Ins. Co*,
715 F. App'x 209 (3d Cir. 2017) ........................................................................24

*Whiskey Flats Inc. v. Axis Ins. Co.*,
519 F. Supp. 3d 231 (E.D. Pa. 2021) ........................................................15, 17, 19

*Wild Eggs Holdings, Inc. v. State Auto Prop. & Cas. Ins. Co.*,
No. 3:20-CV-501-RGJ, 2021 WL 4234940 (W.D. Ky. Sept. 16, 2021) ................18

*Zagafen Bala, LLC v. Twin City Fire Ins. Co.*,
513 F. Supp. 3d 581 (E.D. Pa. 2021) ...................................................................22

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Statutes**

28 U.S.C. § 1332................................................................................................5

28 U.S.C. § 1441................................................................................................5

28 U.S.C. § 1446.............................................................................................5, 6

Fed. R. Civ. P. 12(b)(6)................................................................................6, 8, 17

**Other Authorities**

10A COUCH ON INSURANCE § 148:46 (3d ed. 2020)....................................................11

## I.      PRELIMINARY STATEMENT

Plaintiff Keystone Sports & Entertainment LLC, owner of the Philadelphia Union Major League Soccer team, along with a number of other related insureds (collectively, "Plaintiffs"), seek coverage under a property insurance policy (the "Policy") for losses relating to the COVID-19 virus. The Policy, issued by Defendant Federal Insurance Company ("Federal"), requires as a condition of coverage that Plaintiffs demonstrate "direct physical loss or damage to" property. In their First Amended Complaint ("FAC"), Plaintiffs attempt to satisfy that requirement based on allegations that they were "unable to use" their home stadium, Subaru Park in Chester, Pennsylvania, and other insured locations "in the manner they were used before the onset of the COVID-19 pandemic" due to "the actual physical presence of COVID-19," "the existence and ongoing threat and spread of COVID-19," and governmental "Closure Orders prohibiting large gatherings." FAC ¶¶ 5, 178.

These and other allegations in the FAC are insufficient to establish coverage. Like many hundreds of insureds whose suits for property insurance coverage have been dismissed since the onset of the pandemic, Plaintiffs plead losses caused by the COVID pandemic and related public health orders, not "direct physical loss or damage" to property. Under the plain language of the Policy and overwhelming case law, "direct physical loss or damage" requires a "physical alteration" of property. Government-imposed restrictions on use of property to prevent the spread of COVID-19 do not qualify.

In a failed attempt to plead physical alteration of property, Plaintiffs spend much of their FAC alleging how COVID-19 is capable of "binding to surfaces and the air," supposedly "destroy[ing]" Plaintiffs' ability to operate its business. FAC ¶¶ 43–53, 102. Such allegations do not pass the plausibility test. Plaintiffs admit that, when the COVID-19 closure orders were relaxed

1

in October 2020, Plaintiffs reopened their facilities, despite the alleged continued presence of COVID-19 on surfaces and in the air. *Id.* ¶ 31. Even today, with COVID-19 still present, Plaintiffs' facilities, including Subaru Park, are now "opened at near full capacity." *Id.* ¶ 30. As this Court and others have held, Plaintiffs' admitted ability to operate "at near full capacity" establishes that their losses arose from restrictions on use of property imposed at the outset of the pandemic, not from the alleged interaction between virus particles and Plaintiffs' property. In any event, it is now black letter law that such interaction does not damage property. Notwithstanding Plaintiffs' contrary allegations, cleaning and sanitizing address the issue.

To date, the Eastern District of Pennsylvania has dismissed dozens of claims just like Plaintiffs' for failure to allege direct physical loss or damage. Nine federal circuits have also weighed in, and all of them have considered and rejected the exact same theories Plaintiffs advance here. Nothing in the FAC distinguishes Plaintiffs' claims from numerous substantively identical cases where this Court—along with a chorus of others—has held on the pleadings that neither the loss of use of property due to COVID-19 closure orders, nor the alleged presence of COVID-19, cause "direct physical loss or damage" to property. Plaintiffs' claims simply have no path forward, and the FAC should be dismissed with prejudice.

## II.   STATEMENT OF FACTS

### A.   The Policy

Federal issued the Policy, Customarq Series Customarq Classic Insurance Program Policy Number 3594-16-31 PHL, for the July 1, 2019 to July 1, 2020 Policy Period. ECF 32-1 ("Policy") at 1.[1] Plaintiffs assert that they are entitled to coverage under the provisions of the following Policy

---

[1] For convenience, citations to pages of the Policy, which Plaintiffs attached as Exhibit 1 to the FAC, refer to the ECF pagination due to the multiple sections included in that document.

forms: (1) the Building And Personal Property Form, which includes Preparation of Loss Fees coverage, and (2) the Business Income with Extra Expense Form, which includes Ingress and Egress coverage, Civil Authority coverage, and Dependent Business Premises coverage. FAC ¶¶ 140–52. A threshold requirement for coverage under each of these forms is "direct physical loss or damage" to the covered property at the insured premises (for Building And Personal Property and Business Income With Extra Expense coverage), or at premises other than those belonging to Plaintiffs (for Ingress and Egress, Civil Authority, and Dependent Business Premises coverage). Policy at 31, 40, 60, 62–64.

The relevant language of the Building And Personal Property Form is located at page 31 of the Policy and states as follows:

| Building Or Personal Property | We will pay for direct physical loss or damage to: |
| | • **building**; or |
| | • **personal property**, |
| | caused by or resulting from a peril not otherwise excluded, not to exceed the applicable Limit Of Insurance for Building Or Personal Property shown in the Declarations. |

The Building And Personal Property Form also includes coverage for Preparation Of Loss Fees. *Id.* at 40. The relevant language states as follows:

| Preparation Of Loss Fees | We will pay the reasonable and necessary expenses we require you to incur after covered direct physical loss or damage to covered property to determine the extent of such loss or damage, not to exceed the applicable Limit Of Insurance for Preparation Of Loss Fees shown in the Declarations. |

The relevant language of the Business Income With Extra Expense Form is located at page 60 of the Policy and states as follows:

| Business Income And Extra Expense | We will pay for the actual:<br>• **business income** loss you incur due to the actual impairment of your **operations**; and<br>• **extra expense** you incur due to the actual or potential impairment of your **operations**,<br>during the **period of restoration**, not to exceed the applicable Limit Of Insurance for Business Income With Extra Expense shown in the Declarations.<br>This actual or potential impairment of **operations** must be caused by or result from direct physical loss or damage by a **covered peril** to **property**, unless otherwise stated. |
|---|---|

The Business Income and Extra Expense Form also includes the following coverages: Ingress And Egress, Civil Authority, and Dependent Business Premises. *Id.* at 62–64. The relevant language in the Policy states as follows:

| Ingress And Egress | We will pay for the actual:<br>• **business income** loss you incur due to the actual impairment of your **operations**; and<br>• **extra expense** you incur due to the actual or potential impairment of your **operations**,<br>when existing ingress to or egress from a premises shown in the Declarations is prevented due to direct physical loss or damage by a **covered peril** to property, provided such property is within:<br>• one mile; or<br>• the applicable miles shown in the Declarations,<br>from such premises, whichever is greater. |
|---|---|

| Civil Authority | We will pay for the actual:<br>• **business income** loss you incur due to the actual impairment of your **operations**; and<br>• **extra expense** you incur due to the actual or potential impairment of your **operations**,<br>directly caused by the prohibition of access to:<br>• your premises; or<br>• a **dependent business premises**,<br>by a civil authority.<br>This prohibition of access by a civil authority must be the direct result of direct physical loss or damage to property away from such premises or such **dependent business premises** by a **covered peril**, provided such property is within:<br>• one mile; or<br>• the applicable miles shown in the Declarations,<br>from such premises or **dependent business premises**, whichever is greater. |
|---|---|

| Dependent Business Premises | We will pay for the actual: |
|---|---|
| | • **business income** loss you incur due to the actual impairment of your **operations**; and |
| | • **extra expense** you incur due to the actual or potential impairment of your **operations**, |
| | during the **period of restoration**, not to exceed the applicable Limit Of Insurance for Dependent Business Premises shown under Business Income in the Declarations. |
| | This actual or potential impairment of **operations** must be caused by or result from direct physical loss or damage by a covered peril to **property** or **personal property** of a **dependent business premises** at a **dependent business premises**. |

In sum, *all* of the forms under which Plaintiffs seek coverage for their alleged losses of business income and extra expense require the same precondition: that "direct physical loss or damage" to covered property occurred. Absent such "direct physical loss or damage" to covered property, no coverage is available.

### B.   Procedural Background

Plaintiffs filed their original Complaint on January 2, 2021 in the Court of Common Pleas of Philadelphia County, asserting claims for breach of contract, bad faith, and declaratory judgment. ECF 1-1 ¶¶ 138–42, 143–50. On February 9, 2021, Federal timely removed the Complaint to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. ECF 1. Plaintiffs subsequently filed a Motion to Remand, arguing that other previously named defendants destroyed diversity, but the Court held the other defendants were "fraudulently joined and must be dismissed" from the lawsuit. ECF 28 at 1. Accordingly, on December 7, 2021, this Court denied Plaintiffs' Motion to Remand and dismissed the defendants other than Federal. ECF 29.

At a March 3, 2022 status conference, Plaintiffs advised the Court of their intent to seek leave to amend their Complaint. Federal advised the Court that it would not object to the motion for leave to amend, but that it intended to move to dismiss the FAC, and requested that discovery be stayed pending resolution of the motion. The Court granted Plaintiffs' request for leave to

amend, set a schedule for filing the motion to dismiss and, over Plaintiffs' objections, stayed discovery pending a ruling on the motion. ECF 34.

### C.      Plaintiffs' First Amended Complaint

Plaintiffs allege that their "business is conducted in Subaru Park, an 18,500-seat stadium located . . . [in] Chester, Pennsylvania[,]" along with "the training fields immediately outside of Subaru Park[.]" FAC ¶ 2. Other insured premises under the Policy include: "the Training Facility located at 2525 Seaport Drive [in] Chester . . . and an office building located at 2501 Seaport Drive [in] Chester[.]" *Id.* Plaintiffs describe Subaru Park, home to the Philadelphia Union Major League Soccer team, as a "world-class event space that hosts Major League Soccer, in addition to numerous other sporting events, concerts, entertainment events, private special events, training clinics, camps and tours." *Id.* ¶¶ 3–4. It is a judicially noticeable fact, verifiable from Plaintiffs' website, that the stadium and training fields are open-air spaces.[2]

According to Plaintiffs, those properties "suffered 'direct physical loss or damage' under the plain and ordinary meaning of that term" when "COVID-19 made Subaru Park and the Insured Locations unusable in the way that they had been used before the onset of the COVID-19 pandemic." *Id.* ¶ 5. Plaintiffs allege—in conclusory fashion:

> The presence of cases of COVID-19 at a property causes physical loss and damage by rendering a property that is usable and safe for humans into a property that, absent remedial measures, is unsatisfactory for use, uninhabitable, unfit for its intended function, and extremely dangerous and potentially deadly for humans.

---

[2] *See* https://www.philadelphiaunion.com/stadium/about (last accessed Apr. 4, 2022). In ruling on a motion under Rule 12(b)(6), the Court may consider, among other things, "matters of which a court may take judicial notice." *Star Buick GMC v. Sentry Ins. Grp.*, 541 F. Supp. 3d 582, 586–87 (E.D. Pa. 2021) (citations omitted). Such matters include publicly available information about Plaintiffs' buildings and location, verifiable from Plaintiffs' website. *See Dunkin' Donuts Franchised Rests., LLC v. Claudia I, LLC*, 998 F. Supp. 2d 383, 387 n.6 (E.D. Pa. 2014) (citing *Southerland v. St. Croix Taxicab Ass'n*, 315 F.2d 364, 367 (3d Cir. 1963)).

*Id.* ¶ 70. As a result of this alleged alteration, Plaintiffs claim damages for, among other things, "the reduction of revenue and income related to the cancellation and/or indefinite postponements of Philadelphia Union home games, concerts, private special events, tours, youth camps, and public training camps." *Id.* ¶ 167.

Plaintiffs' FAC adds a number of new allegations about the chemical composition of the virus that causes COVID-19. *See id.* ¶¶ 43–53. Most of these allegations relate to the virus's ability to allegedly "attach[] to and adhere on surfaces and materials," which allegedly allows the virus to "become[] a part of those surfaces and materials" and "convert[s] the surfaces and materials to fomites." *Id.* ¶ 43. Plaintiffs allege that these fomites can also be "aerosolized into the air" through both simple breathing and heavier breathing, allowing the virus to "spread in poorly ventilated and/or crowded indoor settings[.]" *Id.* ¶¶ 44–46. None of these new allegations, however, change the core theory of Plaintiffs' case, which remains that Plaintiffs' business was interrupted as a result of "the actual physical presence of COVID-19, the existence and ongoing threat and spread of COVID-19, and the Closure Orders prohibiting large gatherings resulting from COVID-19[.]" *Id.* ¶ 178. Plaintiffs further maintain they are entitled to coverage because "[w]ithout a virus or communicable disease exclusion in the Policy," they "reasonably believed and expected Federal to pay their claims." *Id.* ¶ 165.

Notwithstanding the FAC's focus on the COVID-19 virus, Plaintiffs own allegations show that it was the county- and state-wide orders of the Pennsylvania Government taken in response to the virus that restricted Plaintiffs' use of their insured premises. Plaintiffs explain how, "[a]s a result of these orders, Subaru Park and Plaintiffs' other Insured Locations had to remain closed" at first. *Id.* ¶ 98. The Orders then allowed Plaintiffs' locations to "begin to reopen, albeit in a significantly limited capacity," on June 4, 2020; allowed Plaintiffs "to open Subaru Park to fans

7

… at extremely limited capacity" on October 11, 2020; "allowed the Plaintiffs to host outdoor events at Subaru Park at 50% capacity" in April 2021 and at "75% capacity" in May 2021; and finally enabled Subaru Park to "reopen[ ] at full capacity to fans" on June 23, 2021. *Id.* ¶¶ 80–97.

Before filing suit, Plaintiffs submitted a claim to Federal under the Policy seeking coverage for their alleged business income losses. *Id.* ¶ 126. On June 17, 2020, Federal issued a letter to Plaintiffs denying coverage for their claim. *Id.* ¶ 127–28; ECF 1-1 at 235–43.

## III.    PLEADING STANDARDS AND RULES OF POLICY INTERPRETATION

### A.    Standard of Review

"To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Greenwood Racing Inc. v. Am. Guarantee & Liab. Ins. Co.*, No. CV 21-1682, 2021 WL 5050087, at *2 (E.D. Pa. Nov. 1, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (further citations omitted)). "A claim is facially plausible when the facts pleaded 'allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged.'" *Id.* In evaluating the sufficiency of a complaint, "the court must 'accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff.'" *Star Buick GMC v. Sentry Ins. Grp.*, 541 F. Supp. 3d 582, 586 (E.D. Pa. 2021) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Star Buick*, 541 F. Supp. 3d at 587  (quoting *Iqbal*, 556 U.S. at 678). "'[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' and only a complaint that states a plausible claim for relief survives a motion to dismiss." *Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, 537 F. Supp. 3d 780, 786 (E.D. Pa. 2021) (quoting *Iqbal*, 556

U.S. at 678–79). "The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted." *Id.* (citing *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)).

### B.    Principles of Pennsylvania Insurance Contract Interpretation

Under Pennsylvania law, "the interpretation of an insurance contract is a question of law." *Delaware Valley Mgmt., LLC v. Cont'l Cas. Co.*, No. 2:20-cv-4309, 2021 WL 5235277, at *3 (E.D. Pa. Nov. 10, 2021) (citing *401 Fourth St., Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 170 (Pa. 2005). As a matter of black letter law, "[t]he words in the policy are construed by their 'natural, plain and ordinary sense' meaning." *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616, 621 (E.D. Pa. 2020) (internal citation omitted); *see also Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 901 (3d Cir. 1997) ("If . . . the terms of the policy are clear and unambiguous, the general rule in Pennsylvania is to give effect to the plain language of the agreement."). Even if "a term is not defined in an insurance policy but possesses a clear legal or common meaning that may be supplied by a court, the contract is not ambiguous." *Advent Home Mortg. Corp. v. Hartford Cas. Ins. Co.*, No. 06-1582, 2006 WL 7121792, at *4 (E.D. Pa. Aug. 14, 2006) (internal quotation omitted); *see also Kvaerner Metals Div. v. Com. Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006) ("Words of common usage in an insurance policy are construed according to their natural, plain, and ordinary sense."). In a claim for insurance coverage, "an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage." *Charter Oak Ins. Co. v. Maglio Fresh Food*, 979 F. Supp. 2d 581, 592–93 (E.D. Pa. 2013) (citing *State Farm Fire & Cas. Co. v. Est. of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (applying Pennsylvania law)). Plaintiffs have failed to meet that burden here.

## IV.    ARGUMENT

Each of the Policy coverages referenced in the Complaint require "direct physical loss or damage" to property. Policy at 31, 40, 60, 62–64. Under the plain language of the Policy and well-established case law, this phrase requires a "physical alteration" of property. Plaintiffs' allegations that their business suffered as a result of COVID-19 or related governmental orders do not satisfy this requirement. The absence of a virus, communicable disease, or pandemic exclusion in the Policy does not change that result. As Plaintiffs' breach of contract claims fail for these reasons, so does their bad faith claim.

### A.    The Policy's coverages require physical alteration of property.

The caselaw in Pennsylvania holds that, in property insurance policies, the phrase "direct physical loss or damage" requires physical alteration of property. In *Motorists Mutual Insurance Co. v. Hardinger*, the Third Circuit, applying Pennsylvania law, considered whether *E. coli* contamination in a residential well qualified as a "physical loss or damage" to the property. 131 F. App'x 823, 826 (3d Cir. 2005). In predicting how the Pennsylvania Supreme Court would interpret the term "physical," the Court held that "[i]n ordinary parlance and widely accepted definition, physical damage to property means *a distinct, demonstrable alteration of its structure*." *Id.* at 826, n.3 (emphasis added; internal quotation omitted). In so holding, the Court relied on *Port Authority of New York & New Jersey v. Affiliated FM Insurance Co.*, an earlier Third Circuit decision, which explained that "'[f]ire, water, smoke and impact from another object are typical examples of physical damage from an outside source that may demonstrably alter the components of a building and trigger coverage.'" 311 F.3d 226 (3d Cir. 2002).

As recognized in *Port Authority* and decisions of this Court, the rule that physical loss or damage requires an alteration to the physical structure of property also finds substantial support in the leading treatise on insurance law:

> [The] requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to *exclude alleged losses that are intangible or incorporeal* and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact *unaccompanied by a distinct, demonstrable, physical alteration of the property.*

10A COUCH ON INSURANCE § 148:46 (3d ed. 2020) (emphasis added); *Port Authority*, 311 F.3d at 235 (citing same); *Boscov's Dep't Store, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 546 F. Supp. 3d 354, 363–64 (E.D. Pa. 2021) (same).

Consistent with this well-established principle, this Court and others throughout the Third Circuit and across the country hold that COVID-19 and related governmental orders impacting the use of property **do not** cause direct physical loss or damage to property. In *Delaware Valley*, Judge Goldberg relied on *Hardinger* and *Port Authority* to dismiss plaintiffs' complaint, finding that "Plaintiffs have not plausibly alleged either physical loss or physical damage within the meaning of the Policy." 2021 WL 5235277, at *8. The court reasoned that "[t]he words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure." *Id.* at *5 (internal citation omitted). Likewise, in *Round Guys Brewing Co. v. Cincinnati Ins. Co.*, Chief Judge Sanchez recognized that this Court "ha[s] reached a consensus" when addressing identical policy provisions in the context of the COVID-19 pandemic: "loss of business due to governmental orders is not enough." No. 20-6252, 2021 WL 4306027, at *3 (E.D. Pa. Sept. 22, 2021).

Judges Leeson, Baylson, Wolson, Kenney, Savage, Beetlestone, Bartle, Gallagher (and others) have also found the same. *See, e.g.*, *4431, Inc. v. Cincinnati Ins. Comp.*, 504 F. Supp. 3d 368, 383 (E.D. Pa. 2020) (Leeson, J.) (relying on both *Hardinger* and *Port Authority* to find that "economic loss resulting from an inability to utilize a premises" is insufficient on its own to constitute direct 'physical loss' under the Policy); *Chester Cty. Sports Arena v. Cincinnati Specialty Underwriters Ins. Co.*, 530 F. Supp. 3d 546, 554 (E.D. Pa. 2021) (Baylson, J.) ("Government orders in response to a virus simply do not fit [the Third Circuit's] physicality requirement[,]" so "when there is no alteration to a physical structure . . . precedent points in the direction of finding no physical loss."); *JMR Holdings, LLC v. Valley Forge Ins. Co.*, No. 2:21-cv-00839-JDW, 2021 WL 3722264, at *3 (E.D. Pa. Aug. 23, 2021) (Wolson, J.) (lost business income due to COVID "falls outside the scope of the Policy because it does not result from any direct, physical compromise to the integrity of the insured property"); *Indep. Rest. Grp. v. Certain Underwriters at Lloyd's*, 513 F. Supp. 3d 525, 532 (E.D. Pa. 2021) (Kenney, J.) ("[T]he Court agrees with the court's conclusion in *4431, Inc.* . . . that, under Pennsylvania law, for Plaintiffs to assert an economic loss resulting from their inability to operate their premises as intended within the coverage of the Policy's 'physical loss' provision, the loss and the bar to operation from which it results must bear a causal relationship to some physical condition of the premises."); *Newchops*, 507 F. Supp. 3d at 624 (Savage, J.) ("[W]e conclude that the damage must be physical . . . . Loss of utility is not structural or physical. Nor is the mere possibility of the presence of the virus in the nearby properties.") (internal citation omitted); *Tria WS LLC v. Am. Auto. Ins. Co.*, 530 F. Supp. 3d 533, 539 (E.D. Pa. 2021) (Beetlestone, J.) ("Given its ordinary meaning, the phrase 'direct physical loss of' property requires that the property be rendered unusable by some physical force."); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 499 F. Supp. 3d 95, 100 (E.D. Pa. 2020)

(Bartle, J.) ("Plaintiff has failed to plead plausible facts that COVID-19 caused damage or loss in any physical way to the property so as to trigger coverage as set forth in *Hardinger*."); *Isaac's Deli, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 539 F. Supp. 3d 424, 431 (E.D. Pa. 2021) (Gallagher, J.) ("'direct physical loss'" requires harm to the actual physical structure of property which impedes business operations"). [3]

As of the date of this filing, all of the U.S. Courts of Appeals to address the issue—the Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits—have reached the same conclusion: COVID-19 and related governmental orders **do not** cause direct physical loss or damage to property. *See, e.g.*, *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 223 (2d Cir. 2021); *Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 21-1311, 2022 WL 662986, at *6 (4th Cir. Mar. 7, 2022); *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 456 (5th Cir. 2022); *Santo's Italian Café, LLC v. Acuity Ins. Co.*, 15 F.4th 398, at 401–02 (6th Cir. 2021); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, No. 21-1186, 2021 WL 5833525, at *4 (7th Cir. Dec. 9, 2021); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1143–44 (8th Cir. 2021); *Selane Prod., Inc. v. Cont'l Cas. Co.*, No. 21-55123, 2021 WL 4496471, at *1 (9th Cir. Oct. 1, 2021); *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704, 710

---

[3] Pennsylvania state court decisions have reached the same conclusion. *See, e.g., Isaac's at Spring Ridge, LLP v. MMG Ins. Co.*, 2021 WL 1650789, at *1 n.1 (Pa. Com. Pl. Mar. 2, 2021); *Spector Gadon Rosen Vinci P.C. v. Valley Forge Ins. Co.*, 2020 WL 10458593, at *3–4 (Pa. Com. Pl. May 01, 2020); *Venezie Sporting Goods, LLC v. Allied Ins. Co. of Am.*, 2021 WL 5368915, at *8–9 (Pa. Com. Pl. May 20, 2021); *Lehigh Valley Baseball, LP v. Phila. Indem. Ins. Co.*, No. 00958, 2021 WL 3029899, at *5 (Pa. Com. Pl. June 17, 2021); *Classic Design Fine Art, Inc. v. Lititz Mut. Ins. Co.*, 2021 Phila. Ct. Com. Pl. LEXIS 34, *1 (Dec. 14, 2021). Certain Pennsylvania trial courts have reached different conclusions, but, as further discussed below, this Court has not found their reasoning persuasive. *See, e.g., Tria WS LLC*, 530 F. Supp. 3d 544 (E.D. Pa. 2021); *Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*, 539 F. Supp. 3d 409, 423 (E.D. Pa. 2021).

(10th Cir. Dec. 21, 2021); *Gilreath Fam. & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *1 (11th Cir. Aug. 31, 2021).

**B.      Plaintiffs do not and cannot allege direct physical loss or damage.**

Under the foregoing caselaw, Plaintiffs cannot satisfy the Policy's requirement of "direct physical loss of or damage to" property. Setting aside conclusory references to that term in the Complaint, Plaintiff offers two basic theories for doing so: (1) that, as a result of COVID-19 and related governmental orders, "Plaintiffs were unable to use Subaru Park and the Insured Locations in the manner they were used before the onset of the COVID-19 pandemic[,]" FAC ¶ 5; and (2) that the COVID-19 virus itself "structurally alter[ed] the Covered Property[.]" *Id.* ¶ 53. Neither theory withstands scrutiny.

The caselaw already discussed easily dispenses of Plaintiffs' first theory. "[E]conomic loss resulting from an inability to utilize a premises" is insufficient on its own to constitute direct 'physical loss' under the Policy," *4431, Inc.*, 504 F. Supp. 3d at 383, and "Government orders in response to a virus simply do not fit [the Third Circuit's] physicality requirement." *Chester Cty. Sports Arena*, 530 F. Supp. 3d at 554; *see also JMR Holdings, LLC*, 2021 WL 3722264, at *3; *Indep. Rest. Grp.*, 513 F. Supp. 3d at 532; *Newchops*, 507 F. Supp. 3d at 616; *Tria WS*, 530 F. Supp. 3d at 539; *Brian Handel*, 499 F. Supp. 3d at 100; *Isaac's Deli*, 539 F. Supp. 3d at 431.

Here, Plaintiffs' contention that they were "unable to use" Insured Premises, or that "[their] ability to operate [their] business at the Insured Premises has been destroyed," *id.* ¶ 69, is stretching it. Plaintiffs' own allegations show only that "their ability to conduct business was limited, which resulted in purely economic losses." *Delaware Valley*, 2021 WL 5235277, at *5; *see* FAC ¶ 8 ("Insured Properties lost *at least part* of their functionality and *most of their ability* to generate

revenue[.]") (emphasis added). In any event, Plaintiffs' alleged inability to use the property for its intended purposes does not trigger coverage.

Recognizing this, Plaintiffs devote the vast majority of the FAC to allegations attempting to show that the COVID-19 virus "structurally alter[ed]" their property. To advance this theory, Plaintiffs allege that the COVID-19 virus "can exist on surfaces for days," "becomes a part of those surfaces and materials," and "alters the structure of property" by means of its "spike protein." FAC ¶¶ 43, 51, 53. Plaintiffs also allege that the virus spreads via "[a]irborne viral particles," and that its spike protein "physically alters the air in the property" by bonding to "particulate matter" in the air. *Id.* ¶¶ 47–50, 52, 53. Yet as much as Plaintiffs try to bolster these allegations by citations to articles, the overwhelming case law in this Court and others holds that such allegations do not satisfy the Policy's requirement of "direct physical loss or damage" to property.

There are two main reasons for this. First, an insured's own allegations that its "business reopened (albeit with restrictions and limited capacity) once the government orders lifted … show[ ] that *the government orders addressing the virus rather than the virus itself was the source seriously affecting the property's functionality*." *Indep. Rest. Grp.*, 513 F. Supp. 3d at 534 (emphasis added); *Moody v. Hartford Fin. Grp. Inc.*, 513 F. Supp. 3d 496, 506–07 (E.D. Pa. 2021) (insured's "reopening, albeit with mitigation measures to protect public health, … demonstrates that the government orders addressing the virus rather than the virus itself was the source seriously affecting the property's functionality"); *Whiskey Flats Inc. v. Axis Ins. Co.*, 519 F. Supp. 3d 231, 236 (E.D. Pa. 2021) ("Plaintiff's income losses were caused by the Shutdown Orders and modifications to its operations due to the risk of transmission of the virus at its premises, not some speculative, unprovable physical damage or unknown condition of the property."); *KWB Enters., Inc. v. Nationwide Gen. Ins. Co.*, No. 20-CV-5195, 2022 WL 282533, at *3–4 (E.D. Pa. Jan. 31,

2022) ("Although the virus incidentally contacts the property as it spreads, there is no 'causal relationship' pleaded between that incidental contact and the business loss Plaintiff alleges.").[4]

Plaintiffs make precisely such allegations in the FAC. They acknowledge that they reopened Subaru Park and their other Insured Locations as soon as the "Closure Orders" allowed, "reopen[ing] … in a significantly limited capacity" in June 2020; "open[ing] Subaru Park to fans … at extremely limited capacity" in October 2020; "host[ing] outdoor events … at 50% capacity" and at "75% capacity" in April and May, 2021, respectively; and "reopen[ing] at full capacity to fans" in June 2021. FAC ¶¶ 80–97.[5] Thus, Plaintiffs' own allegations show they made all of their decisions to reopen, from June 2020 through June 2021, in response to the Government Orders allowing them to do so, notwithstanding the continued presence of COVID-19, and despite Plaintiffs' dire allegations about the fearsome properties of the virus, including its purported

---

[4] Courts across the country agree. *See, e.g.*, *First & Stewart Hotel Owner, LLC v. Fireman's Fund Ins. Co.*, No. 2:21-cv-00344-BJR, 2021 WL 3109724, at *4 (W.D. Wash. July 22, 2021); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d 738, 740 (S.D. Cal. 2020); *Johnson v. Hartford Fin. Servs. Grp.*, 510 F.Supp.3d 1326, 1337 (N.D. Ga. 2021); *Uncork & Create LLC*, 498 F. Supp. 3d 878, 883 (S.D. W. Va. 2020).

[5] In a seeming attempt to diminish the impact of the Closure Orders, Plaintiffs allege that "[i]n early March 2020, the Philadelphia Union reported that one of its athletes had tested positive for COVID-19." FAC ¶ 71. However, the article Plaintiffs cite, as well as the Philadelphia Union's own announcement, shows that the player's positive test was not reported until April 1, 2020, weeks *after* Major League Soccer had suspended its season, FAC ¶ 75, and after the first Pennsylvania Closure Orders. FAC ¶¶ 83–85. *See* https://www.philadelphiaunion.com/news/philadelphia-union-confirms-first-case-covid-19 (dated April 1, 2020, last accessed April 4, 2022).

16

resistance to all forms of cleaning.[6] As a result, Plaintiffs' allegations foreclose any contention that the virus's alleged interaction with surfaces or air in Plaintiffs' property triggers coverage.[7]

Plaintiffs' allegations that the virus's microscopic interactions with surfaces and air causes "direct physical loss or damage" to property also fails because it does not meet the plausibility standard applicable to Rule 12(b)(6). Indeed, it contradicts what everyone knows to be true. As this Court has made clear—on the pleadings—"[e]ven if there was coronavirus present at the property," this condition does not fall within the "'natural, plain, and ordinary sense' meaning" of "physical loss or damage" because it "*can be cured with simply disinfecting surfaces.*" *Whiskey Flats Inc.*, 519 F. Supp. 3d at 236; (emphasis added); *Moody*, 513 F. Supp. 3d at 507 ("[b]ecause surfaces would merely need to be cleaned, … presence of the virus would not render the property useless or uninhabitable or nearly eliminate or destroy its functionality"); *Indep. Rest. Grp.*, 513 F. Supp. 3d at 534 (same). Numerous other courts reject "presence of the virus" allegations for the same reason. As the Sixth Circuit puts it:

> While the impact of the virus on the world over the last year and a half can hardly be overstated, its impact on physical property is inconsequential: deadly or not, *it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days.*"

---

[6] Notably, by alleging that "[t]he rise of the Omicron variant fueled yet another separate and distinct wave of the coronavirus, causing physical loss of or damage to the Insured Locations," FAC ¶ 65, Plaintiffs prove too much. While not necessary to a decision on this motion, Plaintiffs' public attendance records show that on December 5, 2021, at the height of the Omicron variant in the Philadelphia region, Subaru Park had 19,487 in attendance, its largest home crowd in more than 10 years. *See* https://www.philadelphiaunion.com/club/pressbox/almanac/attendance (last accessed Apr. 4, 2022).

[7] Plaintiffs' allegations about impact of the virus on "air" also cannot trigger coverage because the Policy specifically provides that "air" is not part of any insured Building or Personal Property. *See* ECF No. 32-1 at 109 ("**Building** does not mean … land, water or air, either inside or outside of a structure"); *id.* at 121 ("**Personal property** does not mean … "land, water or air, either inside or outside of a structure"). As one court explained applying similar definitions, "Air is not covered property and, therefore, its alteration cannot constitute physical loss or damage." *First & Stewart*, 2021 WL 3109724, at *3.

*Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 335 (7th Cir. 2021) (emphasis

added); *see also Brown Jug, Inc. v. Cincinnati Ins. Co.*, 27 F.4th 398, 404 (6th Cir. 2022)

("cleaning and reconfiguring spaces, to reduce the threat of COVID-19 … are 'not tangible,

physical losses, but economic losses.'") (citation omitted); *Northwell Health, Inc. v. Lexington Ins.

Co.*, No. 21-CV-1104 (JSR), 2021 WL 3139991, at *6 (S.D.N.Y. July 26, 2021) ("[A] property

may be kept 'safe and sanitized,' and therefore usable, despite the presence of SARS-CoV-2.")

These courts' commonsense recognition about the effectiveness of cleaning and sanitizing

cannot be overcome by Plaintiffs' parade of footnoted articles. The same approach has been tried

and rejected many times, in cases applying the same coverage analysis as this Court. *See, e.g.,*

*Wild Eggs Holdings, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 3:20-CV-501-RGJ, 2021 WL

4234940, at *9–10 (W.D. Ky. Sept. 16, 2021) (dismissing case despite allegations that "COVID-

19 physically attaches to air molecules and property" with its "spike proteins"); *Lamacar Inc. v.*

*Cincinnati Cas. Co.*, No. 3:21-CV-1396-S, 2022 WL 227162, at *2, *4 (N.D. Tex. Jan. 26, 2022)

(dismissing case despite allegations that "the specific morphology of the Coronavirus, including

the characteristic spikes or clubs protruding from the virus's spherical casing," causes it to

"chemically or ionically bond[ ] with solids and particulate matter suspended in ambient air,

resulting in a physical alteration of property."); *Brown Jug*, 27 F.4th at 404 (affirming dismissal

despite allegations that "when droplets containing the virus land on surfaces, they transform that

which they touch into dangerous 'fomites'"); *HILLBRO LLC v. Oregon Mut. Ins. Co.*, No. 3:21-

CV-00382-HZ, 2021 WL 4071864, at *9 (D. Or. Sept. 7, 2021) (dismissing claim despite

allegations about the "presence of COVID-19 aerosolized or suspended droplets or particles in the

air"); *First & Stewart*, 2021 WL 3109724, at *2 (dismissing claim despite plaintiff's "extensive

reference to the latest scientific findings" that COVID-19 "physically alter[ed] indoor air").

Moreover, Plaintiffs' own allegations contradict their assertions that cleaning and other remedial measures are ineffective. As Plaintiffs concede, such "remedial measures" may "*reduce or eliminate the presence of cases of COVID-19*." FAC ¶ 54 (emphasis added). The undisputed availability of remedial measures confirms that the "presence of the virus would not render the property useless or uninhabitable or nearly eliminate or destroy its functionality." *Indep. Rest. Grp.*, 513 F. Supp. 3d at 534; *see also Whiskey Flats Inc.*, 519 F. Supp. 3d at 236. For much of the same reason, this Court and others reject Plaintiffs' attempt to draw a parallel between COVID-19 and asbestos damage that renders a property "uninhabitable and unusable." *See Kessler Dental Assocs., P.C. v. Dentists Ins. Co.*, 505 F. Supp. 3d 474, 480 (E.D. Pa. 2020) (quoting *Port Authority*); *see also Boscov's*, 546 F. Supp. 3d at 364; *Moody*, 513 F. Supp. 3d at 507. Courts across the country agree. *See Sandy Point Dental, P.C.*, 20 F.4th 327 at 333 (distinguishing cases involving COVID-19 from those involving termite infestations, asbestos and gases).

Although Plaintiffs contend there are "numerous court rulings across the country and in Pennsylvania holding that insureds have properly alleged or are in fact entitled to coverage for Coronavirus-related business interruption loss or damage," FAC ¶ 16, that is simply not true. *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 800 (W.D. Mo. 2020), which allowed claims to proceed where plaintiff alleged COVID-19 "'is a physical substance,' that it 'live[s] on' and is 'active on inert physical surfaces,' and is 'emitted into the air,'" cannot bear the weight Plaintiffs place on it. Courts have described the case as "*[a] widely-criticized and oft-rejected outlier case*." *Parker v. Cincinnati Ins. Co.*, No. 5:21-CV-44-BJB, 2022 WL 614921, at *2 (W.D. Ky. Mar. 2, 2022) (emphasis added). Indeed, every court in this district that has considered it has in fact rejected it. *Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*, 516 F. Supp. 3d 450, 458 n.5 (E.D. Pa. 2021) ("The Court declines to adopt the reasoning of *Studio 417, Inc. et al. v.*

*The Cincinnati Insurance Co.*, a decision from the Western District of Missouri . . . . ") (Pratter, J.); *Chester Cty. Sports Arena*, 530 F. Supp. 3d at 554 ("As far as this Court is aware, *Studio 417* is the only COVID-19 business interruption case where a federal court denied the insurer's motion to dismiss.") (Baylson, J.). *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 487 F. Supp. 3d 834 (N.D. Cal. 2020), *aff'd,* 15 F.4th 885 (9th Cir. 2021), is no help either, as the complaint there was actually dismissed and the footnote Plaintiffs cite is a mere footnote of no authority.

The decisions in *Taps & Bourbon on Terrace, LLC v. Underwriters at Lloyds London*, No. 00375, 2020 WL 6380449, at *1 (Pa. Com. Pl. Oct. 26, 2020) and *Ridley Park Fitness, LLC v. Philadelphia Indem. Ins. Co.*, No. 01093, 2020 WL 8613467, at *1 (Pa. Com. Pl. Aug. 31, 2020) lend no support to Plaintiffs. There is no written opinion for either of these cases, and both merely found the issue "premature" for decision in a footnote. The same footnote cautioned that it was "very early stage" and that "the law and facts are rapidly evolving in the area of COVID-19 related business losses." *See Taps & Bourbon*, 2020 WL 6380449, at *1; *Ridley Park Fitness*, 2020 WL 8613467, at *1. As discussed above, the overwhelming caselaw in this Court and almost every other court, including Pennsylvania state courts, has gone in a different direction. Indeed, this Court has declined to following the reasoning of either case. *See, e.g.*, *Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*, 539 F. Supp. 3d 409, 418 n.5 (E.D. Pa. 2021); *Delaware Valley*, 2021 WL 5235277, at *7. Considering the wealth of authority dismissing similar claims, mere footnotes and an oft-criticized outlier cannot resuscitate the conclusion that coverage is unavailable under the plain terms of the Policy. Simply put, Plaintiffs have not alleged and cannot allege "direct physical loss or damage" to property.

**C.      The absence of a virus exclusion is irrelevant.**

Plaintiffs next contend that the absence of "a virus or communicable disease exclusion" in the Policy somehow automatically entitles Plaintiffs to coverage for any losses in which a virus may be implicated—whether or not it causes "direct physical loss or damage" to property. FAC ¶ 165. Plaintiffs' argument fails for multiple, independent reasons.

First, Pennsylvania law is clear that neither the presence nor absence of exclusion can be used to create coverage that does not otherwise exist. "[I]t is elemental that exclusions and exceptions in an insurance policy cannot expand the scope of agreed coverage." *Unitrin Direct Ins. Co. v. Esposito*, 751 F. App'x 213, 215 (3d Cir. 2018) (quoting *Bryan Bros. Inc. v. Cont'l Cas. Co.*, 660 F.3d 827, 831 (4th Cir. 2011)). As a result, if a court determines that the alleged loss is not within the scope of coverage, there is "no need to consider whether any exclusions to coverage applied." *Unitrin Direct Ins. Co.*, 751 F. App'x at 215.

Since even the *existence* of an exclusion cannot expand coverage, *a fortiori* the *absence* of an exclusion cannot, as multiple Pennsylvania cases hold in the COVID-19 context. For example, in *Delaware Valley*, the court rejected plaintiff's argument that "if the insurer wanted to exclude coverage for loss or damage attributable to viruses, it should have explicitly excluded it in the language of the policy." 2021 WL 5235277, at *11. As the insured could not "plead a physical loss or damage to their properties … *the absence of a virus exclusion cannot create a basis for coverage*[.]" *Id.* (emphasis added); *see also 4431, Inc.*, 504 F. Supp. 3d at 386 n.18 ("the issue of exclusions is irrelevant as Plaintiffs' claims do not fall within the scope of the Policies' coverage"); *Round Guys*, 2021 WL 4306027, at *4 ("The existence of an exclusion is only relevant if the insured first meets its burden of showing there is direct physical loss to property.").

Second, Plaintiffs' attempt to rely on an exclusion in other policies to modify the language of Plaintiffs' own Policy violates the basic Pennsylvania rule that "[o]nly where a contract's language is ambiguous … may a court consider extrinsic or parol evidence to determine the intent of the parties." *Nationwide Mut. Ins. Co. v. Brophy*, 371 F. App'x 302, 305 (3d Cir. 2010) (citing *Ferrer v. Trs. of the Univ. of Pa.*, 825 A.2d 591, 608 (Pa. 2002)). This Court and others in Pennsylvania and across the country have held that the phrase "direct physical loss or damage" has a "plain meaning" and is "unambiguous." *See, e.g.*, *Boscov's.*, 546 F. Supp. 3d at 368; *Delaware Valley*, LLC, 2021 WL 5235277, at *10. Plaintiffs have no basis for attempting to use extrinsic evidence in the form of exclusions in other policies or statements by Chubb regarding other policies to vary that plain meaning.

Fourth, Plaintiffs cannot use allegations about their own "reasonable expectations" to contend that the Policy affords communicable disease coverage for which Plaintiffs never bargained. Under the reasonable expectations doctrine, a court may in certain instances look beyond the policy to "the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005). "Courts have applied the doctrine, for example, when insureds rely on representations from the insurer that do not accurately represent the contents of the policy issued[,]" or where "the insurer unilaterally altered the insurance coverage." *Paul Glat MD, P.C. v. Nationwide Mut. Ins. Co.*, 531 F. Supp. 3d 908, 912 (E.D. Pa. 2021). Under those limited circumstances, "the insured's reasonable expectations may prevail over the express terms of the contract." *Zagafen Bala, LLC v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 581, 586 (E.D. Pa. 2021). However, when a policyholder fails to allege such conduct, as is the case here, the plain language of the policy controls. *Star Buick*, 541 F. Supp. 3d at 594 (reasonable expectations doctrine "cannot save

[plaintiff's] claims" where "there are no allegations . . . that [defendant] unilaterally changed coverage" or "engaged in any deceptive conduct"). It is blackletter law that unvarnished allegations about a policyholder's unilateral expectations—which is all that Plaintiffs provide here—cannot override unambiguous policy language. *Newchops*, 507 F. Supp. 3d at 621 ("[T]he language of the insurance contract itself serves as the best evidence of the parties' reasonable expectations."); *Frederick Mut. Ins. Co. v. Hall*, 752 F. App'x 115, 117 (3d Cir. 2018) ("courts cannot invoke the reasonable expectation doctrine to create an ambiguity").

Applying this law, this Court has already rejected the argument Plaintiffs advance here—that the absence of a virus exclusion creates a legally cognizable "reasonable expectation" of coverage. In *Isaac's Deli*, Judge Gallagher held that "the absence of a 'virus, bacteria, or microorganism exclusion' provides no support" for the policyholder's "reasonable expectations of coverage contrary to [the policy's] plain terms," and thus dismissed the policyholder's claims with prejudice. 539 F. Supp. 3d at 434. The Court noted that the plaintiff "merely point[ed] to the language of the Policy itself as evidence of their reasonable expectation for coverage[,]" without pleading any allegations that the insurer "unilaterally changed the terms of the Policy after the Parties entered into their agreement." *Id.* Likewise, Plaintiffs here do nothing more than point to the language of the Policy itself to show that they reasonably expected coverage, even though "[c]ourts in this district have consistently dismissed 'loss of use' claims as failing to properly allege a 'loss of property' under the terms of the policy without reference to whether the policy contained a virus exclusion." *Id.* Allegations about their unilateral expectations regarding coverage cannot override unambiguous policy language.

### D.      Plaintiffs' bad faith claim fails because Federal properly denied coverage.

Plaintiffs' bad faith claim fares no better than their claim for each contract. Under Pennsylvania law, where the "face of the [insured's] complaint" shows that the insurer "properly denied coverage, [the insured's] claim for bad faith must also fail. *Mark I Restoration SVC v. Assurance Co. of Am.*, 248 F. Supp. 2d 397, 406 (E.D. Pa. 2003), *aff'd*, 112 F. App'x 153 (3d Cir. 2004); *see also Wehrenberg v. Metro. Prop. & Cas. Ins. Co*, 715 F. App'x 209, 213 (3d Cir. 2017). The same rule has been repeatedly applied in the COVID-19 context. *Clear Hearing Sols., LLC v. Cont'l Cas. Co.*, 513 F. Supp. 3d 566, 579 (E.D. Pa. 2021); *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 549, 564 (E.D. Pa. 2021); *Boscov's*, 546 F. Supp. 3d at 370. Because Federal properly denied coverage, based on Plaintiffs' inability to prove "direct physical loss or damage" to property, Plaintiffs' bad faith claim must be dismissed along with its breach of contract claim.

## V.      CONCLUSION

For the foregoing reasons, the FAC fails to state a claim for which relief may be granted, and should be dismissed. As the analysis above demonstrates that Plaintiffs cannot cure the defects in the FAC, dismissal is properly entered with prejudice.

Dated:  April 4, 2022                                      Respectfully submitted,

                                                          /s/ *David Newmann*
                                                          David Newmann (No. 82401)
                                                          david.newmann@hoganlovells.com
                                                          Jasmeet K. Ahuja (No. 322093)
                                                          jasmeet.ahuja@hoganlovells.com
                                                          Jason M. Russell (No. 325963)
                                                          jason.russell@hoganlovells.com
                                                          1735 Market Street, 23rd Floor
                                                          Philadelphia, PA 19103
                                                          Tel: (267) 675-4600

*Attorneys for Defendant Federal Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I, David Newmann, hereby certify that, on April 4, 2022, I caused the foregoing Motion to Dismiss Plaintiffs' First Amended Complaint to be electronically filed with the Clerk of the U.S. District Court for the Eastern District of Pennsylvania using the CM/ECF system, which will send notification of such filing to all counsel of record.



_____
David Newmann