**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KEYSTONE SPORTS AND ENTERTAINMENT LLC**, *et al.* | |
| *Plaintiffs,* | |
| **v.** | No. 2:21-cv-00609-PBT |
| **FEDERAL INSURANCE COMPANY** | |
| *Defendant*. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**FEDERAL INSURANCE COMPANY'S 12(b)(6) MOTION TO DISMISS**

/s/ Marni S. Berger
Robert J. Mongeluzzi; ID No. 36283
Jeffrey P. Goodman; ID No. 309433
Marni S. Berger; ID No. 309303
Samuel B. Dordick; ID No. 322647
**SALTZ MONGELUZZI &**
**BENDESKY P.C.**
One Liberty Place
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: 215-496-8282
rmongeluzzi@smbb.com
jgoodman@smbb.com
mberger@smbb.com
sdordick@smbb.com

/s/ Adam J. Levitt
Adam J. Levitt*
Mark Hamill*
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Tel: (312) 214-7900
alevitt@dicellolevitt.com
mhamill@dicellolevitt.com

/s/ Mark A. DiCello
Mark A. DiCello*
Kenneth P. Abbarno*
Mark Abramowitz*
**DICELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio 44060
Tel: (440) 953-8888
madicello@dicellolevitt.com
kabbarno@dicellolevitt.com
mabramowitz@dicellolevitt.com

/s/ Mark Lanier

Mark Lanier*

**THE LANIER LAW FIRM PC**

10940 West Sam Houston Parkway North
Suite 100
Houston, Texas 77064
Tel: (713) 659-5200
wml@lanierlawfirm.com

/s/ Timothy W. Burns

Timothy W. Burns*

**BURNS BOWEN BAIR LLP**

One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Tel: (608) 286-2302
tburns@bbblawllp.com

/s/ Douglas Daniels

Douglas Daniels*

**DANIELS & TREDENNICK**

6363 Woodway, Suite 700
Houston, Texas 77057
Tel: (713) 917-0024
douglas.daniels@dtlawyers.com

**Counsel for Plaintiffs**

*Applications for admission *pro hac vice*
to be filed.

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND................................................................................. 2

A. The Policy Language ............................................................................................. 2

B.    Allegations of "Direct Physical Loss or Damage" to Covered Property ............... 3

III.    APPLICABLE LEGAL STANDARDS ............................................................... 4

A.    Standard of Review ............................................................................................. 4

B. Rules of Policy Construction and Interpretation………………………………………….5

IV.    LEGAL ARGUMENT ......................................................................................... 6

A.    Plaintiffs Allege "Direct Physical Loss or Damage" to Covered Property. ............................ 7

1.      Under Pennsylvania law, the Physical Contamination Theory of Liability
Applies………………………………………………………………………………………7

2.      Other States Also Adhere to the Contamination Theory of Liability in the COVID-19
Business Interruption Context…………………………………………………………………11

B. Clearly Observable Structural Alteration to Property is Not Required…………………………15

C.    The "Cleaning of COVID-19" Does Not Preclude a Finding of "Direct Physical Loss or
Damage".................................................................................................................... 17

D.    Although Not Requited, Plaintiffs Have Pled a Demonstrable Alteration to Property. ........ 18

E.    The Supreme Court of Pennsylvania's Determination that COVID-19 is a "Natural Disaster"
is Evidence of "Physical Loss or Damage"................................................................................. 19

F.    The Court Should Not Give Credence to the Definition of "Physical Loss or Damage" Under
10A Couch on Insurance (3d ed. 2010 § 14:46). ....................................................... 20

G.    The Imminent Threat of COVID-19 is Also Covered Under the Express Terms of the Policy
…………………………………………………………………………………………………….21

H.    There Are Issues of Fact That Require Discovery .............................................. 22

I.     Alternatively, Leave to Amend Should be Granted ............................................ 24

V.    CONCLUSION ...................................................................................................... 25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*10012 Holdings, Inc v. Sentinel Ins. Co.*,
  21 F.4th 216 (2d Cir. 2021) ...................................................12

*401 Fourth St., Inc. v. Inv'rs Ins. Grp.*,
  879 A.2d 166 (Pa. 2005) ......................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................4, 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................4, 5

*Brown's Gym, Inc. v. Cincinnati Ins. Co.*,
  No. 20-CV-3113, 2021 WL 3036545 (Pa.Com.Pl. July 13, 2021).........................9

*Chester Cty. Sports Arena v. Cincinnati Spec. Underwriters Ins. Co.*,
  530 F.Supp.3d 546 (E.D. Pa. Mar. 30, 2021) ............................................8

*Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*,
  No. 4:21-CV-00011, 500 F.Supp.3d 565(E.D. Tex. May 5, 2021) .......................2, 12, 13, 16

*Columbiaknit, Inc. v. Affiliated FM Ins. Co.*,
  No. Civ. 98–434–HU, 1999 WL 619100 (D. Or. Aug. 4, 1999) ...........................14

*Connelly v. Lane Const. Corp.*,
  809 F.3d 780 (3d Cir. 2016)....................................................5

*Dino Palmieri Salons, Inc. v. State Auto Mut. Ins. Co.*,
  No. CV-20-932117, 2020 WL 7258114 (Ohio Ct. Com. Pl. Nov. 17, 2020).........................14

*Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*,
  506 F. Supp. 3d 360 (E.D. Va. Dec. 9, 2020) ......................................14

*Essex v. BloomSouth Flooring Corp.*,
  562 F.3d 399 (1st Cir. 2009).....................................................14

*Friends of DeVito v. Wolf*,
  227 A.3d 872 (Pa. 2020) ..................................................19, 20

*Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*,
  193 F.3d 742 (3d Cir. 1999).......................................................5

*General Refractories Co v. First State Ins. Co.*,
94 F.Supp.3d 649 (E.D. Pa. 2015) ..................................................................5

*Gilreath Fam. & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*,
No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021) ................................12

*Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem., Ins. Co.*,
21 F.4th 704 (10th Cir. 2021) ..................................................................12

*Humans & Resources, LLC v. Firstline National Ins. Co.*,
512 F.Supp.3d 588 (E.D. Pa. Jan. 8, 2021).........................................................24

*Indalex Inc v. National Union Fire Ins. Co. of Pittsburgh*,
83 A.3d 418 (Pa. Super. Ct. 2013).................................................................6

*Inman v. Technicolor USA, Inc.*,
2011 WL 5829024 (W.D. Pa. Nov. 18, 2011) ...........................................................5

*JBG Vegas Retail Lessee, LLC v. Starr Surplus Lines Ins. Co.*,
No. A-20-816628-B (Clark Cty. Nev. Apr. 25, 2022) ............................................13

*K.C. Hopps, Ltd. v. Cincinnati Ins. Co.*,
2021 WL 4302834 (W.D. Mo. Sept. 21, 2021) ......................................................14

*Koeppel Clark LLC et al. v. Starr Indem. & Liab.*
Co., No. 2:20-cv-02055-GGG-JVM (Sept. 30, 2021) ............................................22

*Live Nation Ent. Inc. v. Factory Mut. Ins. Co.*,
Case No. LA CV21-00862 .........................................................................13

*Long v. Lipkins*,
96 F.R.D. 234 (E.D. Pa. 1983)...................................................................24

*MacMiles, LLC v. Erie Ins. Exch.*,
No. GD-20-7752, 2021 WL 3079941 (Pa. Ct. Com. Pl. May 25, 2021) ..................................9

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.*,
735 A.2d 100 (Pa. 1999) ..........................................................................6

*Mellin v. N. Sec. Ins. Co.*,
115 A.3d 799 (N.H. 2015) .........................................................................14

*Moody v. Hartford Financial Group, Inc.*,
513 F.Supp.3d 496 (E.D. Pa. 2021) ................................................................8

*Motorist Mut. Ins. Co. v. Hardinger*,
131 F.Appx. 823 (3d Cir. 2005).........................................................*passim*

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
  15 F.4th 885 (9th Cir. 2021) ................................................................. *passim*

*Mudpie, Inc v. Travelers Cas. Ins. Co. of Amer.*,
  487 F.Supp.3d 834 (N.D. Cal. Sept. 14, 2020) ................................14, 19

*Murray v. State Farm Fire and Cas. Co.*,
  509 S.E.2d 1 (W. Va. 1998) ........................................................................6

*N. State Deli, LLC v. Cincinnati Ins. Co.*,
  2020 WL 6281507 (N.C. Super. Ct. Oct. 9, 2020) ...................................19

*NeCo, Inc. v. Owners Ins. Co.*,
  520 F.Supp.3d 1175 (W.D. Mo. Feb. 16. 2021) ......................................13

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*,
  2 F.4th 1141 (8th Cir. 2021) ................................................................11, 12

*Penn Nat'l Gaming, Inc. et al. v. Zurich Am. Ins. Co. et al.*,
  No. 200801187 (Pa. Ct. Com. Pl. Dec. 8, 2021)...................................9, 10

*Phillips v. Cty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008)..........................................................................4

*Pinnell v. Teva Pharmaceutical USA, Inc.*,
  No. No. 19-5738, 2020 WL 1531870 (E.D. Pa. Mar. 31, 2020)................5

*Port Authority of New York & New Jersey v. Affiliated Factory Insurance Co.*,
  311 F.3d 226 (3d Cir. 2002)................................................................. *passim*

*Procaccianti Cos. Inc. et al v. Zurich Amer. Ins. Co.*,
  Case No. 1:20-cv-00512-WES-PAS (D.R.I. Sept. 2, 2021) ....................22

*Regents of the Univ. of Colo. v. Factory Mut. Ins. Co.*,
  2022 WL 245327 (Colo. Dist. Ct. Boulder Cty. January 26, 2022) .................................13, 16

*Rempel v. Nationwide Ins. Co.*,
  370 A.2d 366 (Pa. 1977) ..............................................................................6

*Ridley Park Fitness, LLC v. Philadelphia Indem. Ins. Co.*,
  No. 01093, 2020 WL 8613466 (Pa. Ct. Com. Pl. Oct. 20, 2020) ...........10

*Rowan Univ. v. Factory Mut. Ins. Co.*,
  2022 WL 515516 (N.J. Super. Ct. January 24, 2022)................13, 17, 22

*Salon XL Color & Design Grp., LLC v. W. Bend Mut. Ins. Co.*,
  517 F.Supp.3d 725 (E.D. Mi. Feb. 4, 2021) ............................................14

*Santo's Italian Café LLC v. Acuity Ins. Co.*,
    15 F.4th 398 (6th Cir. 2021) ............................................................12

*Schleicher and Stebbins Hotels, LLC, et al. v. Starr Surplus Lines Ins. Co., et al.*,
    No. 217-2020-CV-00309, 2021 WL 4029204 (N.H. Super. Ct. June 15, 2021) ....................17

*Schofield v. Trustees of University of Pennsylvania*,
    894 F.Supp. 194 (E.D. Pa. 1995 ) ............................................................24

*Selane Prod., Inc. v. Cont'l Cas. Co.*,
    No. 21-55123, 2021 WL 4496471 (9th Cir. 2021) ................................................12

*Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*,
    563 N.W.2d 296 (Minn. App. 1997)............................................................15

*Shepard v. Temple Univ.*,
    948 A.2d 852 (Pa. Super. 2008)....................................................6, 16

*Standard Venetian Blind Co. v. Am. Empire Ins. Co.*,
    469 A.2d 563 (Pa. 1983) ............................................................6

*Studio 417, Inc. v. Cincinnati Ins. Co.*,
    478 F.Supp.3d 794 (W.D. Mo. 2020) ............................................................8

*Susan Spath Hegedus, Inc. v. Ace Fire Underwriters Ins. Co.*,
    538 F.Supp.3d 457 (E.D. Pa. May 7, 2021) ............................................................8

*SWB Yankees, LLC v. CNA Fin. Corp. et al.*,
    No. 20-CV-2155, 2021 WL 3468995 (Pa. Ct. Com. Pl. Aug. 4, 2021)....................................9

*Tapestry Inc. v. Factory Mut. Ins. Co.*,
    No. GLR-21-1941, 2022 WL 1227058 (D. Md. Apr. 25, 2022) ......................................10, 11

*Taps & Bourbon on Terrace, LLC v. Certain Underwriters at Lloyds London*,
    No. 00375, 2020 WL 6380449 (Pa. Ct. Com. Pl. Oct. 26, 2020) ............................................10

*Terry Blacks' Barbecue, L.L.C. v. State Auto Mut. Ins. Co.*,
    22 F.4th 450 (5th Cir. 2022) ............................................................12

*TRAVCO Ins. Co. v. Ward*,
    715 F.Supp.2d 699 (E.D. Va.2010), *aff'd*, 504 F. App'x. 251 (4th Cir. 2013) ......................14

*Travelers Cas. & Sur. Co. v. Castegnaro*,
    772 A.2d 456 (Pa. 2001) ............................................................5

*Widder v. Louisiana Citizens Prop. Ins. Corp.*,
    82 So.3d 294 (La. Ct. App. 2011)............................................................15

**Statutes & Rules of Court**

35 Pa.C.S. §7102 ........................................................................................................19

Fed. R. Civ. P. Rule 12(b)(6) .................................................................................2, 4

Fed. R. Civ. P. 15(a) ..................................................................................................24

**Other Authorities**

10A COUCH ON INSURANCE § 148:46 (3d ed. 2020) ............................................20

*Damage*, Merriam-Webster, http://www.merriamwebster.com/dictionary/damage
(last visited May 2, 2022) ....................................................................................15

*Direct,* Merriam-Webster, http://www.merriam-wester.com/dictionary/direct (last
visited May 2, 2022) .............................................................................................16

*Loss*, Dictionary.com, http://www.dictionary.com/browse/loss (last visited May 2,
2022) .....................................................................................................................15

*Loss,* Merriam-Webster, http://www.merriamwebster.com/dictionary/loss (last
visited May 2, 2022) .............................................................................................15

*Physical,* Merriam-Webster,
https://www.merriamwebster.com/dictionary/physical (last visited May 2,
2022) .....................................................................................................................15

Richard P. Lewis et al., *Couch's "Physical Alteration* ...............................................20

Plaintiffs, by and through their undersigned counsel, hereby submit this Memorandum of Law in Opposition to Defendant Federal Insurance Company's ("Federal") Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC").

## I.  **INTRODUCTION**

Plaintiffs and the professional soccer teams they operate play games at Subaru Park, an 18,500-seat stadium located at One Stadium Drive, Chester, Pennsylvania 19013; the training fields immediately outside of Subaru Park; the Training Facility located at 2525 Seaport Drive, Chester, Pennsylvania 19013, and an office building located at 2501 Seaport Drive, Chester, Pennsylvania 19013 ("the Insured Locations"). Despite paying considerable premiums for business interruption insurance to protect themselves from losses like those alleged here, Federal swiftly and improperly denied coverage. Now, Federal attempts to rewrite Plaintiffs' COVID-19 business interruption claims to align them with those of *other plaintiffs* in *other cases* under *other states' laws* who allege damages arising primarily from the government closure orders ("Closure Orders") as opposed to the actual contamination of the property and airspace, the impairment of function caused by that contamination, and the expressly covered imminent threat thereof. The COVID-19 coverage cases decided in this District, incorrectly relied upon by Federal, did not consider the factual and scientific allegations put forward here regarding the impact of COVID-19 on the physical airspace within the insured premises.

Each of Federal's arguments trace back to its erroneous belief that COVID-19 cannot cause physical loss or damage. However, the allegations that the **primary cause of loss alleged is the presence of the virus itself in the air and on the surfaces that has contaminated the insured property** should not be overlooked. Coverage is also owed because Plaintiffs have sufficiently presented allegations pertaining to the imminent risk of direct physical loss or damage which is

covered under the express terms of the "Loss or Prevention Expenses" and Prohibition of Access Coverage provisions of the Policy. As the Third Circuit recognized in *Port Authority of New York & New Jersey v. Affiliated Factory Insurance Co.*, 311 F.3d 226, 236 (3d Cir. 2002) ("*Port Authority*"), "physical loss or damage" triggering coverage may exist where "***an imminent threat of the release***" of toxins makes a property "useless or uninhabitable." (emphasis added).

Additionally, whether COVID-19 causes loss or damage is a question of fact for the jury to decide to be explored in both fact and expert discovery. Under the Third Circuit standard set forth in *Port Authority*, 311 F.3d 226, these allegations are sufficient to survive a Fed. R. Civ. P. 12(b)(6) motion as applied to the unique terms of the operative Federal policy. *See Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*, No. 4:21-CV-00011, 500 F. Supp.3d 565,  569 (E.D. Tex. May 5, 2021) (denying Factory Mutual's motion to dismiss a claim by a policyholder where it was alleged "COVID-19 was actually present and actually damaged the property by changing the content of the air").

## II.    FACTUAL BACKGROUND

### A.  The Policy Language

Customarq Series Customarq Classic Insurance Program Policy Number 3594-16-31 PHL (the "Policy") was issued to Plaintiffs for the period of effective July 1, 2019 to July 1, 2020. *Id.* at ¶33. Under the Policy, Defendant Federal promised to pay Plaintiffs' Business Income and Extra Expense coverage for the actual business income loss incurred due to the actual or potential impairment of operations during the period of restoration caused by or resulting from "direct physical loss or damage" to the Insured Locations. *Id.* at  ¶141. Federal also promised to provide ingress or egress and civil authority coverage where direct physical loss or damage to property occurred within one mile of the Insured Locations) as well as dependent business coverage,

preservation of property or "Sue and Labor," prohibition of access and loss or prevention expenses coverage. *Id.* at ¶¶140-151. The four corners of the FAC as compared to the four corners of the Policy make clear that both the loss prevention expenses and prohibition of access coverages are triggered where there is an imminent (rather than actual) direct physical loss or damage. **Ex. A** to FAC, ECF Doc. No. 32-1 at 5, 10, 33, 67; FAC at ¶¶ 11,145. Absent from the Policy are any relevant virus or communicable disease exclusions. FAC. ¶160.

### B.  Allegations of "Direct Physical Loss or Damage" to Covered Property

COVID-19, a harmful, deadly, highly contagious, and infectious communicable disease physically infested the Insured Locations. *Id.* at ¶6; ¶¶39-42. The actual presence of COVID-19 at the Insured Locations, prior to any Closure Order being issued and thereafter as well, on various dates in 2020 and 2021, was "not only a substantial factor in causing the loss"; [i]t was the predominant, principal, or immediate factor in causing the loss or damage." *Id.* at ¶¶7, 135. "Numerous Philadelphia Union athletes and staff that were present at the Insured Locations tested positive for COVID-19." *Id.* at ¶12.

 "The presence of the coronavirus and COVID-19, including, but not limited to coronavirus droplets or nuclei on solid surfaces and in the air at the insured property, caused direct physical damage to physical property and ambient air at the premises." *Id.* at ¶138. Coronavirus droplets were conveyed from infected persons to the solid surfaces, including, but not limited to furniture, doors, floors, bathroom facilities, equipment, and supplies, and into the air and HVAC systems, causing damage and alteration to the physical property and ambient air. *Id.* at ¶137. Such presence also directly resulted in the loss of functionality of the Insured Locations." *Id.* at ¶¶137-138.

In order to reopen Subaru Park at limited capacity in October 2020, Plaintiffs refurbished and altered the Insured Locations. *Id.* at ¶¶111-121. By way of example, touch-free sanitizing

stations were bolted and installed throughout the Insured Locations and the locker rooms, suites, press box, and other areas were repurposed or remodeled. *Id.* at ¶115. At the Office Building, air sanitizers were installed (one in each fitness room); two thermal temperature screening devices were installed (one at the main entrance and one at the garage entrance); the roof top air handler was replaced; air filter changes were made, and plexiglass was installed at the security desk and in the café. *Id.* at ¶119 .While cleaning efforts were increased, "mere cleaning and disinfecting of the property and the air does not repair or remediate the actual physical and tangible alteration to property caused by the coronavirus and/or COVID-19, nor does it transform the property from its unsafe, hazardous, and potentially deadly condition." *Id.* at ¶55. "Despite Plaintiffs' adherence to all terms of the Policy, Defendant breached its duty of good faith and fair dealing and wrongfully denied Plaintiffs' claims for Business Interruption losses by letter dated June 17, 2020." *Id.* at ¶127.

### III.   **APPLICABLE LEGAL STANDARDS**

#### A.  **Standard of Review**

In assessing whether a complaint withstands a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "take the factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citing *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). To survive a motion to dismiss, a plaintiff must allege sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face," or put another way, "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant may be liable for the misconduct alleged. *Id.* A

complaint may not be dismissed "merely because it appears unlikely or improbable that the plaintiff can prove the facts alleged or will ultimately prevail on the merits." *Inman v. Technicolor USA, Inc.*, 2011 WL 5829024, at *3 (W.D. Pa. Nov. 18, 2011). If the facts alleged raise "a reasonable expectation that discovery will reveal evidence of the necessary elements," the motion to dismiss should be denied. *Id.*

"When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). ***Factual disputes cannot be resolved at the motion to dismiss phase***. *Pinnell v. Teva Pharmaceutical USA, Inc.*, No. No. 19-5738, 2020 WL 1531870, at *5 (E.D. Pa. Mar. 31, 2020). (emphasis added). The insurer moving to dismiss bears the burden of demonstrating "the insurance contract unambiguously reveals that an insured is not entitled to coverage." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 745, n.1 (3d Cir. 1999). If resolution of a dispute turns on the meaning of undefined policy terms, then "the fact-intensive analysis attendant to the resolution of [the insured's] claims is appropriately reserved for summary judgment." *Id.* at *4 (denying insurer's motion to dismiss where "the parties have not yet had an opportunity to address how such terms are used in the insurance industry."

### B.  Rules of Policy Construction and Interpretation

The insurance policy is to be construed as a whole with unambiguous language given its plain and ordinary meaning. *Travelers Cas. & Sur. Co. v. Castegnaro*, 772 A.2d 456, 459 (Pa. 2001). A policy is ambiguous if "it can be given two alternate reasonable interpretations." *General Refractories Co v. First State Ins. Co.*, 94 F.Supp.3d 649, 658 (E.D. Pa. 2015). The intention of the parties at the time they entered the contract is the controlling guide in policy interpretation.

*Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). While clear policy language is to be applied as written, if the meaning of words or the effect of provision is uncertain or capable of more than one reasonable interpretation, the doubts are to be resolved against the insurance company and in favor of the policyholder, and in accordance with the policyholder's  reasonable expectations. *Id.* at 566. To ensure proper construction of a disputed term in an insurance contract, courts commonly consult standard dictionary definitions. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999).

Words in an insurance contract may not be treated as mere surplusage. *Indalex Inc. v. National Union Fire Ins. Co. of Pittsburgh*, 83 A.3d 418, 421 (Pa. Super. Ct. 2013) (internal citations omitted). When policy language is ambiguous, a determination of the parties' intent poses a question of fact and extraneous evidence may be admitted to aid in resolving the question. *Shepard v. Temple Univ.*, 948 A.2d 852, 857 (Pa. Super. 2008). *See also Murray v. State Farm Fire and Cas. Co.*, 509 S.E.2d 1, 9 n.5 (W. Va. 1998) ("A provision in an insurance policy may be deemed to be ambiguous if courts in other jurisdictions have interpreted the provision in different ways."). Grants of coverage are to be construed broadly and liberally in favor of coverage. *Rempel v. Nationwide Ins. Co.*, 370 A.2d 366, 371 (Pa. 1977).

## IV.   <u>LEGAL ARGUMENT</u>

Federal's position that it carries no coverage obligation relies entirely on the improper legal conclusion (contradicted by the facts alleged) that COVID-19 can never cause direct physical loss or damage. Def. Brief in Supp. of MTD, Doc. No. 35-1, at 10. This argument fails because the law in the Third Circuit simply requires Plaintiffs to allege that the actual presence of or the "imminent release of" COVID-19 at the Insured Locations "nearly eliminated" the properties' functions or made them "useless or uninhabitable." *See Port Authority*, 311 F.3d at 234. Plaintiffs have met

this standard as they allege that COVID-19 is a physical substance and alters physical airspace, which renders it unsafe and unusable for intended purposes, and the Policy covers property deprivation caused by the imminent threat of COVID-19. As set forth more particularly below, Federal's contention that the FAC fails to state a claim for relief runs contrary to the Policy's plain language and Pennsylvania law.

    **A. Plaintiffs Allege "Direct Physical Loss or Damage" to Covered Property.**

        1. Under Pennsylvania law, the Physical Contamination Theory of Liability Applies.

Plaintiffs have pled plausible claims because the actual presence and permeation of the Insured Locations by COVID-19 constitutes physical loss or damage as does the imminent threat of its release that impaired the properties' function. It is undisputed that the Pennsylvania federal trial court holdings reached in the COVID-19 business interruption context uniformly adhere to the "physical loss or damage" standard established by the Third Circuit in *Port* Authority, 311 F.3d 226, and *Motorist Mut. Ins. Co. v. Hardinger*, 131 F.Appx. 823, 826 (3d Cir. 2005) ("Hardinger"). In *Port Authority*, 311 F.3d at 230, the owners of facilities that incorporated asbestos products into their construction initiated suit against their commercial property insurers to recover costs of abatement. They alleged that physical damage occurred as a result of the "presence of asbestos," the "threat of release" of asbestos fibers, and the "actual release" of asbestos fibers. *Id.* The trial court granted the insurer's motion for summary judgment and, while the Third Circuit affirmed, the Third Circuit held that "[w]hen the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct loss to its owner." *Id*. at 236. The Court observed: "Although the plaintiffs demonstrated that many of its structures used asbestos-containing substances, those buildings had continuous and uninterrupted usage for many years. *Id.* Although *Port Authority* was decided by

the Third Circuit under New Jersey law, the Third Circuit predicted the Pennsylvania Supreme Court would adopt a similar standard "in a case where sources unnoticeable to the naked eye" "reduce the use of the property to a substantial degree." *Hardinger*, 131 F.Appx. 823 at 826. In *Hardinger*, the Third Circuit reversed the trial court's ruling that bacterial contamination did not satisfy the "direct physical loss" requirement and ruled that summary judgment was improper because there were genuine issues of material fact as to whether there was a physical loss. *Id.* at 828.

The federal district court decisions in Pennsylvania have suggested that COVID-19 can sufficiently alter surfaces and the air quality to constitute physical loss or damage as alleged by Plaintiffs. *See* FAC at ¶¶11, 44. Significantly, in *Chester Cty. Sports Arena v. Cincinnati Spec. Underwriters Ins. Co.*, 530 F.Supp.3d 546, 554 (E.D. Pa. Mar. 30, 2021), a case holding that "government-ordered restrictions" do not equate to direct physical loss to property, this Court distinguished *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F.Supp.3d 794 (W.D. Mo. 2020) because the "plaintiffs there alleged that the virus itself caused the requisite loss to property."[1] Thus, under *Port Authority*, *Hardinger*, and *Chester County Sports Arena*, the requisite physical loss is found where COVID-19 permeates the property, including the airspace.[2]

---

[1] Likewise, in *Susan Spath Hegedus, Inc. v. Ace Fire Underwriters Ins. Co.*, 538 F.Supp.3d 457, 469 (E.D. Pa. May 7, 2021), this Court, applying California law, held allegations regarding the inability to operate due to COVID-19 stated plausible claims of "direct physical loss of . . . property at the described premises and "'direct physical loss of or damage to' is ambiguous.").

[2] Federal relies upon *Moody v. Hartford Financial Group, Inc.*, 513 F.Supp.3d 496, 507 (E.D. Pa. 2021), incorrectly, where the Court confined its "physical loss or damage" analysis of COVID-19 to surfaces, *not airspace*. The Court stated that "because *surfaces* would merely need to be cleaned, contamination would not meet the requirements under *Port Authority* because presence of the virus would not render the property useless or uninhabitable or nearly eliminate or destroy its functionality." *Id*. This case can be distinguished simply after a plain reading of *Moody's* holding.

Since insurance coverage is a creature of state law there are unsurprisingly numerous Pennsylvania state courts which have found COVID-19 can lead to direct physical loss or damage. By way of example, in *Brown's Gym, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-3113, 2021 WL 3036545, at \*8-\*15 (Pa.Com.Pl. July 13, 2021), the Court looked closely at pre-pandemic decisions addressing coverage where property was rendered useless or uninhabitable by an invisible source, including *Port Authority* and *Hardinge*r. Under a "physical contamination theory," COVID-19 could constitute "physical loss or damage" in the same way invisible sources such as ammonia, fumes, e-coli bacteria, carbon monoxide, gas vapors, led intrusion, odor from cat urine, or methamphetamine cooking, made covered premises unusable, unsafe, or unfit for its intended use. *Id.* at \*1-2. In *SWB Yankees, LLC v. CNA Fin. Corp. et al.*, No. 20-CV-2155, 2021 WL 3468995, at \*2 (Pa. Ct. Com. Pl. Aug. 4, 2021), averments regarding the continued presence of COVID-19 that renders the property "unsafe" and "unfit for its intended use" also sufficiently alleged physical loss or damage.

COVID-19's physical impact on the condition of property was similarly recognized in *MacMiles, LLC v. Erie Ins. Exch.*, No. GD-20-7752, 2021 WL 3079941 (Pa. Ct. Com. Pl. May 25, 2021). There, "[t]he spread of COVID-19, and a desired limitation of the same, had a close logical, causal and/or consequential relationship to the ways in which the plaintiff materially utilized its property and physical space." *Id.* at \*6. The Allegheny Court of Common Pleas (the Honorable Christine Ward presiding) granted summary judgment in favor of the insured and denied the defendant's cross motion for summary judgment finding that COVID-19 caused the plaintiff to physically limit the use of property and the number of people that could inhabit the physical building at any given time. *Id.* The plaintiff's economic losses were secondary to the physical ones. *Id. See also See Penn Nat'l Gaming, Inc. et al. v. Zurich Am. Ins. Co. et al.*, No. 200801187 (Pa.

Ct. Com. Pl. Dec. 8, 2021) (Hon. Tucker, Leon, W.) (the plaintiffs raised factual issues for discovery following the denial of motions for judgment on the pleadings, despite the argument posed by numerous different defendant commercial property insurers that the plaintiffs did not allege direct physical loss or damage to property under Pennsylvania law)[3]; *Taps & Bourbon on Terrace, LLC v. Certain Underwriters at Lloyds London*, No. 00375, 2020 WL 6380449 (Pa. Ct. Com. Pl. Oct. 26, 2020) (Hon. Glazer, Gary, S.) (holding the insured pled facts sufficient to survive the initial motion phase of the proceedings); *Ridley Park Fitness, LLC v. Philadelphia Indem. Ins. Co.*, No. 01093, 2020 WL 8613466 (Pa. Ct. Com. Pl. Oct. 20, 2020) (Hon. Glazer, Gary S.) (taking the insured's allegations as true, the court could not resolve the factual determination so as to dismiss plaintiff's claims). The inability to fully use property due to COVID-19 and Closure Orders was also found to constitute a direct and physical loss in *Ungarean*, No. GD-20-006544, 2021 WL 1164836, at *7 (Pa. Com. Pl. Mar. 25, 2021) (Hon. Ward, Christine) since the spread of COVID-19 had a close relationship to the ways the insured materially used the space.

Defendant presupposes that the changed physical condition of the air from safe to unsafe does not constitute physical loss or damage to property but gives no valid explanation as to why the air is not "physical." Just days ago, in *Tapestry Inc. v. Factory Mut. Ins. Co.*, No. GLR-21-1941, 2022 WL 1227058, at *4 (D. Md. Apr. 25, 2022), the District of Maryland granted a motion to certify to the Maryland Court of Appeals to answer the following important and unsettled question:

> When a first-party, all risk property insurance policy covers "all-risks of physical loss or damage" to insured property from any cause unless excluded, is coverage triggered when a toxic, noxious, or hazardous substance—such as Coronavirus or COVID-19—that is physically present in the indoor air of that property damages the

---

[3] True and correct copies of these orders are appended hereto as **Exhibit A**.

property or causes loss, either in whole or in part, of the functional
use of property?

*Id.* at *2.

Consistent with *Port Authority* and *Hardinger*, in granting the Motion to Certify, the District of

Maryland held that, a property may arguably be physically degraded—even if only temporarily—

by the existence of coronavirus in the air. *Id.* at *4.[4]

> 2. Other States Also Adhere to the Contamination Theory of Liability in the
>    COVID-19 Business Interruption Context.

Defendant is correct that numerous federal courts have ruled against policyholders in

COVID-19 business interruption matters. Doc. No. 35 at 13. Defendant's reliance on those cases

is however misplaced because the complaints at issue before most federal courts have not

specifically pled the actual physical presence of COVID-19 and the related alteration to the

surfaces and air at the insured property. As noted by the Eighth Circuit in *Oral Surgeons, P.C. v.*

*Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) and again by the Ninth Circuit in *Mudpie,*

*Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F. 4th 885, 893 (9th Cir. 2021), a "physical alteration"

may include "physical contamination" of premises—precisely what Plaintiffs have alleged here.

In *Oral Surgeons*, the Eighth Circuit recognized the fact that "contamination" may constitute direct

physical loss when accompanied by loss of use. *Oral Surgeons*, 2 F.4th at 1144. It was specifically

recognized that the type of physicality to loss or damage required by the insuring agreement

included either a physical alteration, physical ***contamination***, or physical destruction." *Id.*

(emphasis added). The general averments regarding the suspension of non-emergency procedures

due to the pandemic and the government-imposed restrictions—rather than COVID-19

contamination—were the basis for the Court's decision to affirm dismissal. *Id.* at 1145. Similarly,

---

[4] The argument that air is not part of the Policy's definitions of "building" or "personal property"
(Def. Mot, Doc. No. 35-1 at 25, n. 1) is flawed because neither "covered property" nor "direct
physical loss or damage" is defined under the Policy.

the Ninth Circuit in *Mudpie* noted that the contamination of an insured property by a physical substance such as COVID-19 may suffice. It held that "direct physical loss or damage" "requires some showing of actual or tangible harm to **<u>or intrusion on</u>** the property itself." *Mudpie*, 15 F.4th at 895 (quoting *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1200 (D. Kan. Dec. 3, 2020)).

Conversely, however, the early complaints that led to many of the initial appellate rulings relied on the premise that civil authority orders—independent of the physical presence of COVID-19, affected the operation of businesses in a way that constituted direct physical loss or damage. *See e.g.*, *Terry Blacks' Barbecue, L.L.C. v. State Auto Mut. Ins. Co.*, 22 F.4th 450, 457 (5th Cir. 2022) (no physical presence of the coronavirus alleged); *10012 Holdings, Inc v. Sentinel Ins. Co.*, 21 F.4th 216 (2d Cir. 2021) (same); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. 2021) (same); *Oral Surgeons*, 2.F.4th at 1144 (same); *Mudpie*, 15 F.4th 885 (same); *Selane Prod., Inc. v. Cont'l Cas. Co.*, No. 21-55123, 2021 WL 4496471 (9th Cir. 2021) (same); *Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem., Ins. Co.*, 21 F.4th 704, 710 (10th Cir. 2021) (same); *Gilreath Fam. & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) (per curium). These cases are all inapposite because they assess complaints regarding general loss-of-use or "purely economic" losses in stark contrast to the allegations of contamination pled by Plaintiffs.

Federal and state trial level courts have similarly concluded physical contamination is sufficient to meet the physical loss or damage requirement. In *Cinemark Holding, Inc. v. Factory Mut. Ins. Co.*, 500 F. Supp. 3d 565, 569 (E.D. Tex. 2021), the Eastern District of Texas denied the defendant's motion to dismiss because allegations that COVID-19 was present and damaged the property by changing the content of the air plausibly triggered coverage. The insured alleged that

COVID-19 was statistically certain to be present in the air, particularly if the insured did not take proactive measures to prevent and mitigate the presence of the virus. *Id.* The defendant attempted to rely on case law that the Court distinguished because it involved different harm and different policy terms. *Id.* at 568-69. The defendant failed to meet its burden, in critical part, because "[u]nlike the [purportedly analogous case law cited by Federal], Cinemark alleges that COVID-19 was actually present and actually damaged property by ***changing the content of the air***." *Id.* at 569 (emphasis added). In *NeCo, Inc. v. Owners Ins. Co.,* 520 F.Supp.3d 1175, 1180 (W.D. Mo. Feb. 16. 2021), valid claims were presented that COVID-19 impaired the value, usefulness and/or normal function of the premises. *See also Live Nation Ent. Inc. v. Factory Mut. Ins. Co.*, Case No. LA CV21-00862 JAK-KS, 2022 WL 390712, at *7 (C.D. Cal. Feb. 3, 2022) (sufficiently alleging physical damage resulting from the actual presence of COVID-19 at the plaintiff's property and finding "[t]he position that the presence of COVID-19 is a physical intrusion that affects the integrity of a property is the more persuasive one…"); *JBG Vegas Retail Lessee, LLC v. Starr Surplus Lines Ins. Co.*, No. A-20-816628-B (Clark Cty. Nev. Apr. 25, 2022) (**Ex. B**) (denying Defendant's motion for summary judgment in part and allowing breach of contact claims for business income and civil authority coverage to proceed to trial because "[t]he court is not persuaded by defendant's contentions that there are no genuine issues going to the existence of physical alteration damage to property that would preclude coverage as a matter of law."); *Regents of the Univ. of Colo. v. Factory Mut. Ins. Co*., 2022 WL 245327, at *4-*5 (Colo. Dist. Ct. Boulder Cty. January 26, 2022) (holding it is plausible to conclude that a property could become so saturated with contaminated objects, that its properties were uninhabitable); *Rowan Univ. v. Factory Mut. Ins. Co*., 2022 WL 515516 at *2 (N.J. Super. Ct. January 24, 2022) (finding that because of allegations that COVID-19 is a physical substance, the determination of whether

COVID-19 constitutes "physical loss or damage" is a factual determination); *K.C. Hopps, Ltd. v. Cincinnati Ins. Co.*, 2021 WL 4302834, at *8 (W.D. Mo. Sept. 21, 2021) (holding coronavirus contamination was "physical loss" or "physical damage"); *Salon XL Color & Design Grp., LLC v. W. Bend Mut. Ins. Co.*, 517 F.Supp.3d 725, *729 (E.D. Mi. Feb. 4, 2021) (determining allegations that COVID-19 particles infected the property, exposed visitors to the disease and rendered the property unable to be used for its intended purpose satisfied the direct-physical-loss requirements needed to survive a 12(b)(6) motion); *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 506 F. Supp. 3d 360, 376 (E.D. Va. Dec. 9, 2020) (it is plausible that direct physical loss could mean the property is too dangerous to use because of an intangible or non-structural, sources and treating COVID-19 contamination like contamination by ammonia, toxic gas, or noxious odors); *Mudpie, Inc v. Travelers Cas. Ins. Co. of Amer.*, 487 F.Supp.3d 834, 842, n.7 (N.D. Cal. Sept. 14, 2020) (stating: "Had Mudpie alleged the presence of COVID-19 in its store, the Court's conclusion about intervening force would be different" as COVID-19 "is no less a 'physical force' than the 'accumulation of gasoline'"); *Dino Palmieri Salons, Inc. v. State Auto Mut. Ins. Co.*, No. CV-20-932117, 2020 WL 7258114, at *5 (Ohio Ct. Com. Pl. Nov. 17, 2020) (concluding premises sustained physical loss or damage directly from the presence of physical COVID-19 particles).[5]

---

[5] The precedent finding harmful but invisible agents that impair the function of property cause "direct physical loss or damage" is overwhelming. *See e.g.*, *Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) (finding an unpleasant odor rendering property unusable constitutes physical injury to the property); *TRAVCO Ins. Co. v. Ward*, 715 F.Supp.2d 699, 709 (E.D. Va.2010), *aff'd*, 504 F. App'x. 251 (4th Cir. 2013) (finding "direct physical loss" where a home was "rendered uninhabitable by the toxic gases" released by defective drywall); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. Civ. 98–434–HU, 1999 WL 619100, at *6 (D. Or. Aug. 4, 1999) ("physical damage can occur at the molecular level and can be undetectable in a cursory inspection" and holding that the presence of microbial mold and fungi constituted "direct physical loss"); *Mellin v. N. Sec. Ins. Co*., 115 A.3d 799, 803 (N.H. 2015)) (odor from cat urine equates to direct physical loss because the term is not restricted to only tangible changes to property visible to the eye); *Widder v. Louisiana Citizens Prop. Ins. Corp.*, 82 So.3d 294, 296 (La. Ct. App. 2011) (inorganic lead contamination caused a house to suffer "direct physical loss"). *See also*

**B.  Clearly Observable Structural Alteration to Property is Not Required.**

Defendant Federal urges the Court to find that Plaintiffs' Insured Locations must have sustained demonstrable structural harm such as that evident after a fire wreaks havoc to a property for the Court to find "direct physical or damage" and to suggest that Plaintiffs' Insured Locations were not tangibly harmed or destroyed. Def. Br. In Supp. of MTD, Doc. No. 35, at 10. The claim that COVID-19 cannot cause physical damage to property is an unsupported factual assertion that is not only opposed but directly contradicts the allegation of the FAC and plain meaning of the critical insuring agreements/"trigger language" of the Policy. Accordingly, Plaintiffs' claims cannot be resolved by motion to dismiss.

Despite Federal's claims to the contrary, the word "physical" does not suggest any requirement for "tangible" alteration. *"Physical"* means "of or relating to natural science," "characterized or produced by the forces and operations of physics," or "having material existence."[6] *"Loss"* does not require tangible alteration either. Its definition includes not just "destruction" and "ruin," but also "deprivation," and "disadvantage."[7] Accordingly, for a property to be "lost" it need not be tangibly altered or stolen but rather impaired in such a way that its owner is deprived of its use.[8] "Damage" can be defined as "loss or harm resulting from injury," or "expense" and cost."[9] To characterize something as "direct" is for that thing to be "characterized by close logical, causal, or consequential relationship" or to be "marked by absence of an

*Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. App. 1997) (contamination by asbestos may constitute a direct physical loss to property because a building's function may be seriously impaired, and the property rendered useless by the presence of contaminants).

[6] *Physical,* Merriam-Webster, https://www.merriamwebster.com/dictionary/physical (last visited May 2, 2022).

[7] *Loss*, Dictionary.com, http://www/dictionary.com/browse/loss (last visited May 2, 2022).

[8] *Loss,* Merriam-Webster, http://www.merriamwebster.com/dictionary/loss (last visited May 2, 2022).

[9] *Damage*, Merriam-Webster, http://www.merriamwebster.com/dictionary/damage (last visited May 2, 2022).

intervening agency, instrumentality, or influence."[10] Plaintiffs allege that the actual presence of COVID-19 directly caused loss and damage and there was a close logical, causal, and consequential relationship between COVID-19 and the loss and damage sustained. (FAC at ¶¶8-11). The Court should apply these definitions to find the term "direct physical loss or damage" includes a loss of use or functionality of the insured premises. These definitions establish that, at a bare minimum, the trigger language of the Policy is ambiguous and must be strictly construed against Federal and in favor of coverage. *Shepard*, 948 A.2d at 857.

Courts have found that the phrase "physical loss or damage" is susceptible to more than one reasonable interpretation, evidenced by both the split in authority and the plain meaning of the phrase itself. The Court in *Regents,* 2022 WL 245327, at \*7-\*8 noted this distinction when denying an insurer's motion for partial judgment on the pleadings when the Plaintiffs' allegations mirrored those that are brought here:

> While many courts have construed the definition of "physical loss" to mean only a tangible alteration to the structure of the property at issue, *see, e.g., Promotional Headwear Int'l v. The Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1200-01 (D. Kan. Dec. 3, 2020) (stating that the majority of cases [\*8]  hold that "'direct physical loss or damage' requires some showing of actual or tangible harm to or intrusion on the property itself"), others have found that the spread of COVID-19 could plausibly constitute "physical loss" when the insured party alleged that it "was actually present and actually damaged the property by changing the content of the air," *Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*, 500 F.Supp.3d 565, 569 (E.D. Tex. May 5, 2021). In fact, when distinguishing cases the insured had cited, the court in *Promotional Headwear* specifically noted that there was "no allegation that the virus ha[d] physically intruded onto the property...." *Id.*

The Plaintiffs in *Regents* specifically alleged that COVID-19 is spread by "objects that are contaminated with the virus," "aerosols . . . [that] can linger in the air for minutes to hours," and "droplets . . . that fall to the ground after traveling 3-6 feet." *Id.* When paired with the allegations that COVID-19 was identified on the Plaintiffs' property, as is the case here, the Court held that it

---

[10] *Direct,* Merriam-Webster, http://www.merriam-wester.com/dictionary/direct (last visited May 2, 2022).

is plausible to conclude that a property could become so saturated with contaminated objects, that its properties were uninhabitable. *Id.*

The same conclusion was reached in *Rowan Univ.*, 2022 WL 515516 at *2. The Plaintiff alleged "that the virus has caused physical loss of the type allegedly covered by the Policy." *Id.* Because it was alleged that COVID-19 is a physical substance, the determination of whether COVID-19 constitutes "physical loss or damage" was found to be a factual issue. *Id.* This standard is not novel in Pennsylvania. At this stage, when determining if allegations are sufficient, the factual issues of determining whether a damage constitutes "physical loss or damage" preclude motions to dismiss and summary judgment. *401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 169-70 (Pa. 2005).

### C. The "Cleaning of COVID-19" Does Not Preclude a Finding of "Direct Physical Loss or Damage."

Defendant's argument that COVID-19 can be "cleaned easily with routine disinfectant" is one that goes to the measure of loss, not whether there is coverage. *Schleicher and Stebbins Hotels, LLC, et al. v. Starr Surplus Lines Ins. Co., et al.*, No. 217-2020-CV-00309, 2021 WL 4029204, at *10 (N.H. Super. Ct. June 15, 2021) (the fact that SARS-CoV-2 *may*, like cat urine, be removed from surfaces through cleaning and disinfection does not prevent the conclusion that the properties have changed in a "distinct and demonstrable" fashion). This argument posed by Defendant attempts to resolve a factual dispute in Defendant's favor notwithstanding direct contradictions throughout the FAC. *See* FAC at ¶55 ("Mere cleaning and disinfecting of the property and the air does not repair or remediate the actual physical and tangible alteration to property caused by the coronavirus and/or COVID-19, nor does it transform the property from its unsafe, hazardous, and potentially deadly condition."). To find that the presence of COVID-19 cannot constitute

"damage" because it can be cleaned would require the Court to look outside of the pleadings, but Plaintiffs' allegations must be taken as true and construed in their favor.

The suggestion by Federal that there cannot be physical loss or damage because COVID-19 only temporarily remains on surfaces also injects a minimum time element requirement into the coverage provision for physical loss or damage when the Policy does not mandate that loss or damage persist for a minimum amount of time to be covered. Federal had the opportunity to use more restrictive language and set the premium rating at the resulting breadth of coverage. Federal may wish the language were clearer, but its wishes do not change the fact that the Court is obligated to read the Policy as a reasonable policyholder would at the time the Policy was issued.

### D. Although Not Requited, Plaintiffs Have Pled a Demonstrable Alteration to Property.

To the extent the Court finds demonstrable alteration to property is required, it has been pled. Unlike the authority upon which Defendant relies, Plaintiffs allege direct physical loss or damages in various forms. It is alleged that Plaintiffs were forced to physically alter and refurbish their properties and incur significant expenses associated with these changes to combat COVID-19 and remediate. *Id.* at ¶112. Plexiglass and protective shields were installed at concession and retail stands as were mandatory touchless payment options, touchless mobile ticket options, metal detectors and sanitizing stations. *Id.* at ¶¶115-119. Locker rooms, suites, the press box, and other areas were reconfigured, and COVID-19/temperature monitoring equipment was installed. *Id.* at ¶115. At the office building, two air sanitizers were installed along with temperature screening devices. *Id.* at ¶119. Air filter changes were made, and plexiglass was installed at the security desk and café. *Id.* Cleaning measures were heightened throughout the locations and day porter staff on duty. *Id.*

18

Although Defendant disputes the merits of these factual allegations or contends that Plaintiffs' repairs are not illustrative of damage to property, Plaintiffs have stated viable claims for relief, even under Defendant's narrow interpretation of the direct physical loss or damage. Plaintiffs provide concrete examples of how infected individuals who were present on the Insured Locations forced it to shut down on several occasions, including after reopening, because its employees became sick after visiting. This loss of functionality brought about by COVID-19 constitutes a demonstrable alteration to property as well. *Mudpie*, 487 F.Supp. at 840-842; *N. State Deli, LLC v. Cincinnati Ins. Co.*, 2020 WL 6281507, *3 (N.C. Super. Ct. Oct. 9, 2020).

### E.  The Supreme Court of Pennsylvania's Determination that COVID-19 is a "Natural Disaster" is Evidence of "Physical Loss or Damage."

In addition to the plain language of the Policy, the Supreme Court of Pennsylvania's ruling in *Friends of DeVito v. Wolf*, 227 A.3d 872, 888-89 (Pa. 2020) declaring the COVID-19 pandemic a natural disaster is further evidence that clearly observable structural alteration is *not* required *in Pennsylvania* to triggered coverage. In *Devito*, 227 A.3d at 887, the Supreme Court of Pennsylvania rejected a request by business owners seeking to invalidate Governor Tom Wolf's March 16, 2020 order shutting down all non-life sustaining businesses. *Id.* at 88. The Court recognized Governor Wolf's executive powers through statutory authority triggered by the occurrence of a "natural disaster," defined by the Emergency  Management Services Code, 35 Pa.C.S. §7102, as:

> "[a]ny hurricane, tornado, storm, flood, high water, wind driver water, tidal wave, earthquake mudslide, snowstorm, drought fire, explosion or other catastrophe which results in substantial damage to property, hardship, suffering or possible loss of life.

*Id.*

The state Supreme Court held that the first reason the pandemic qualifies as a natural disaster under the Emergency Code is that while specific enumerated disasters lack commonality, they all involve

19

"**substantial damage to property**, hardship, suffering, or loss of life" and thus the pandemic is "of the same general nature or class as those specifically enumerated" and an included rather than excluded type of natural disaster. *Id.* at 889. (emphasis added). The second reason the pandemic qualifies as a natural disaster is that "[b]y setting forth a general list of catastrophes and then including the language 'other catastrophe which results in substantial damage to property, hardship, suffering or possible loss of life,' it is clear that the General Assembly intended to expand the list of disaster circumstances that would provide [Governor Wolf and Secretary of Health Rachel Levine] with the necessary powers to respond to exigencies involving vulnerability and loss of life." *Id.*

The conclusion that the pandemic is a natural disaster just as other events like fire, tornado, and earthquake that are routinely covered under commercial property policies because they cause substantial property damage undermines Federal's position that COVID-19 is not a covered cause of loss. The pandemic is indistinguishable from these other covered events that harm both people *and property*. In fact, under *Devito*, the actual presence of COVID-19 is not even necessary because the county in which Plaintiffs operate was deemed a disaster area suffering loss caused by physical damage. COVID-19 is presumed to have been physically present due to the pervasiveness of the virus to such an extent that the Insured Locations were physically unsafe for occupancy. Coverage should be triggered for this reason.

### F. The Court Should Not Give Credence to the Definition of "Physical Loss or Damage" Under 10A Couch on Insurance (3d ed. 2010 § 14:46).

Defendant's position that "physical loss or damage" requires tangible alteration is also flawed because Defendant quotes from 10A COUCH ON INSURANCE § 148:46 (3d ed. 2020). *See* ECF No. 35-1 at 11. That conclusion "was wrong when *Couch* first made it in 1998, and it is wrong today." Richard P. Lewis et al., *Couch's "Physical Alteration" Fallacy: Its Origins and*

*Consequences*, 56:3 Tort, Trial & Ins. Prac. L.J. 621, 622 (Fall 2022). Another well-respected treatise aptly explained: "When an insurance policy refers to physical loss or damage to property the 'loss of property' requirement can be satisfied by any 'detriment,' and a 'detriment' can be present *without there having been a physical alteration of the object*." *Id.* (quoting 3 Allan D. Windt, Insurance Claims & Disputes 11:41 (6th ed. 2013)). Couch's conclusion was "inferred from a single district court opinion that was disapproved three years later by the governing court of appeals, rather than from the thirteen extant cases then holding to the contrary." *Id.* at 623.

### G.  The Imminent Threat of COVID-19 is Also Covered Under the Express Terms of the Policy.

The suggestion by Federal that structural alteration is required further skips over the Policy language which affords coverage for not just direct physical loss, but the "imminent" threat of direct physical loss or damage. Just as the *Port Authority* Court concluded coverage could be triggered by the "imminent threat" of the release of a harmful substance in the air, if that substance would cause a loss of utility, the imminent *threat* of COVID-19 alone triggers coverage. The Loss Prevention Expenses provision, under which Plaintiffs seek coverage within the FAC, provides: "We will pay the reasonable and necessary costs you incur to protect: building, personal property; or research and development property, at the premises shown in the Declarations from **imminent** direct physical loss or damage caused by or resulting from a peril not otherwise excluded…" Doc. No. 32-1 at 33 of 189. (emphasis added). Similarly, the Prohibition of Access coverage provides that Federal will pay for the actual business income loss and extra expense incurred due to the actual impairment of your operations, directly caused by the prohibition of access to a premises shown in the Declarations by a civil authority… The provision further provides that the prohibition of access must be the direct result of a peril that: A) has occurred at or within 1,000 feet of such premises or B. is certain to occur **imminently**… *Id.* at 67 of 189. (emphasis added). Those

21

provisions demonstrate that coverage is contemplated not just where loss or damage actually occurs but where it is imminent.

## H.  There Are Issues of Fact That Require Discovery.

Plaintiffs do not question Federal's disagreement as to whether COVID-19 can change the structure of property air and surfaces, but those factual disputes should be addressed in discovery, not improperly assumed into law. Other state and federal courts have acknowledged the clear error trial  courts commit when they close the courthouse door on COVID-19 business interruption cases despite well-pleaded facts that directly contradict the defendant's position. In *Rowan Univ.*, 2022 WL 515516, at *2, for example, the Superior Court of New Jersey flatly denied the defendant's motion to dismiss under the following rationale:

> The Court finds Defendant attempts to lead the Court to a higher standard of pleading than a Motion to Dismiss requires. The Court finds at this juncture, Plaintiff must only adequately plead breach of contract to survive this Motion. Plaintiff is not required to prove every single fact alleged to the Court. The Court finds Plaintiff's Complaint addresses each Coverage section and why it is Plaintiff's position that Defendant has breached their contractual promise to cover losses under each section. The Court finds Defendant's wholesale argument that COVID-19 is not physical damage is a factual determination. The Court, on a Motion to Dismiss, must confine its inquiry to a consideration of the legal sufficiency of the alleged facts apparent on the face of the challenged claim.

Other courts have similarly reserved factual disputes for the summary judgment phase. For instance, in *Koeppel Clark LLC et al. v. Starr Indem. & Liab*. Co., No. 2:20-cv-02055-GGG-JVM, at 3 (Sept. 30, 2021) (**Ex. C**), the District of Louisiana determined the plaintiff adequately pled facts that plausibly entitled the plaintiff to relief. While relief is not guaranteed, issues pertaining to coverage were recognized to be better suited for summary judgment or trial. *Id. See also Procaccianti Cos. Inc. et al v. Zurich Amer. Ins. Co.*, Case No. 1:20-cv-00512-WES-PAS (D.R.I. Sept. 2, 2021) (**Ex. D**) (the plaintiffs adequately alleged plausible claims for relief and resolution

of the issues discussed in the papers, including whether the presence of COVID-19 constitutes direct physical loss or damage, may be appropriate on summary judgment following discovery).

At the same time, while conceding that extrinsic evidence is permissible where there are ambiguities in a contract to decipher the parties' intent (ECF Doc No. 35-1 at 30), Defendant would have the Court outright ignore the lack of a virus exclusion in the Policy. The lack of an exclusion is an important consideration because it goes to the heart of the parties' intent at the time the parties entered the Policy, and as noted above, the Policy is at a minimum ambiguous as to the meaning of the trigger language because Federal and Plaintiffs have different reasonable interpretations of that language. Whether Federal knew or should have known to include the standard ISO exclusion or a pandemic exclusion in the Policy as best practice if it intended to exclude business interruption losses stemming from pandemics or viruses is the proper subject of discovery—both fact and expert. The need for such discovery prevents a pleadings-stage dismissal. *See Ungarean*, 2021 WL 1164836, at *7 ("If Defendants wanted to exclude coverage for any loss caused by viruses in any manner whatsoever, Defendants could have easily included such a provision clearly and unambiguously in the contract.").

Furthermore, if proven, the allegations of Plaintiffs' reasonable expectations of coverage state facts which could give rise to a basis to afford coverage to Plaintiffs. It is clearly alleged that "Plaintiffs reasonably believed and expected Federal to pay their claims." FAC at ¶165. Plaintiffs further plead that the ongoing refusal to provide coverage is not only in breach of contract but also "the insureds' reasonable expectation of coverage." *Id.* at 166. Plaintiffs paid considerable premiums in full and relied on the Policy as a shield against unforeseen loss or damage and the

resulting loss of income *Id.* at ¶19. As the reasonable expectations of Plaintiffs is a fact-based inquiry, this Court must deny Defendant's motion.[11]

## I.   Alternatively, Leave to Amend Should be Granted.

Plaintiffs did not include in the FAC specific averments regarding the fact that the COVID-19 pandemic was declared a natural disaster by the Supreme Court of Pennsylvania. Likewise, Plaintiffs did not include allegations regarding conclusions drawn by epidemiologists as to the statistical certainty and prevalence of COVID-19 or the level of transmission rates of COVID-19 in crowd-gathering places such as Subaru Park that made the Insured Locations unsafe and impaired their functionality. Plaintiffs also refrained from explaining the near impossibility of removing COVID-19 from the airspace without sophisticated HVAC and ventilation systems in place. Plaintiffs maintain these are additional issues of fact inappropriate for disposition at this stage in the litigation. However, to the extent the Court feels such issues can be resolved at this time and in light of the liberal pleading standard under Fed. R. Civ. P. 15(a),[12] Plaintiffs herein seek approval to amend the FAC to include such allegations prior to the issuance of a ruling on the pending motion.

---

[11] The reasonable expectations doctrine applies "even when the expectations are in direct conflict with the unambiguous terms of the policy and regardless of Plaintiff's status as a sophisticated purchaser of insurance." *Humans & Resources, LLC v. Firstline National Ins. Co.*, 512 F.Supp.3d 588, 603 (E.D. Pa. Jan. 8, 2021) (citing *UPMC Health System v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004)).

[12] *See Schofield v. Trustees of University of Pennsylvania*, 894 F.Supp.194, 196 (E.D. Pa. 1995) (citing *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990)) (Rule 15(a) "'embodies a liberal approach to amendment,' so that issues may be decided on the merits rather than a technicality."). *See also Long v. Lipkins*, 96 F.R.D. 234 (E.D. Pa. 1983) (Rule 15(a) discretion "should be generally exercised in favor of amendment.").

## V.   __CONCLUSION__

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Federal's Motion to Dismiss.

Date: May 2, 2022                                              Respectfully submitted,

/s/ *Marni S. Berger*
Robert J. Mongeluzzi; ID No. 36283
Jeffrey P. Goodman; ID No. 309433
Marni S. Berger; ID No. 309303
Samuel B. Dordick; ID No. 322647
**SALTZ MONGELUZZI &**
**BENDESKY P.C.**
One Liberty Place
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: 215-496-8282
rmongeluzzi@smbb.com
jgoodman@smbb.com
mberger@smbb.com
sdordick@smbb.com

Adam J. Levitt
Mark Hamill*
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
mhamill@dicellolevitt.com

Mark A. DiCello*
Kenneth P. Abbarno*
Mark Abramowitz*
**DICELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio 44060
Telephone:  440-953-88
madicello@dicellolevitt.com
kabbarno@dicellolevitt.com
mabramowitz@dicellolevitt.com

25

Mark Lanier*
**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas 77064
Telephone:  713-659-5200
WML@lanierlawfirm.com

Timothy W. Burns*
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: 608-286-2302
tburns@bbblawllp.com

Douglas Daniels*
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas 77057
Telephone:  713-917-0024
douglas.daniels@dtlawyers.com

*Applications for admission *pro hac vice* to be filed.

## **<u>CERTIFICATE OF SERVICE</u>**

I, Marni S. Berger, hereby certify that on this 2nd day of May 2022, a true and correct copy of the foregoing Memorandum of Law in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss was filed electronically via the ECF filing system and was served electronically on all counsel of record.

*/s/ Marni S. Berger*

27