# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEYSTONE SPORTS AND ENTERTAINMENT LLC, et al.<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:21-cv-00609-JP<br><br>Hon. District Judge John R. Padova |

## DEFENDANT FEDERAL INSURANCE COMPANY'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

David Newmann (No. 82401)
david.newmann@hoganlovells.com
Jasmeet K. Ahuja (No. 322093)
jasmeet.ahuja@hoganlovells.com
Jason M. Russell (No. 325963)
jason.russell@hoganlovells.com
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267) 675-4600
Fax: (267) 675-4601

*Attorneys for Defendant Federal Insurance Company*

## I.       INTRODUCTION

Plaintiffs do not dispute that the overwhelming majority of decisions in this Court and others across the country reject their theories that COVID-19 or related government orders cause "direct physical loss or damage" to property. Rather than attempting to show otherwise, Plaintiffs contend that none of this caselaw matters, because it did not consider "the factual and scientific allegations put forward here." Opp'n at 1. Plaintiffs are wrong. This Court and others have considered and rejected Plaintiffs' theories many times over. And Plaintiffs offer no answer to the fundamental problem that their allegations fail to satisfy the basic test of plausibility. Plaintiffs allege that COVID-19 rendered their property "uninhabitable, unfit for its intended function, and extremely dangerous and potentially deadly," FAC ¶ 70, yet Plaintiffs concede that, in the midst of the ongoing COVID-19 pandemic, their open-air sports stadium entertained record audiences at "full" or "near full capacity." *Id.* ¶¶ 80–97. Plaintiffs' opposition simply highlights that they cannot plead a plausible claim.

## II.      ARGUMENT

### A.      *Port Authority* and *Hardinger* Foreclose Plaintiffs' Coverage Theory.

Plaintiffs spend much of their response cherry-picking snippets from *Port Authority of NY & NJ v. Affiliated Factory Insurance Co.*, 311 F.3d 226 (3d Cir. 2002) and *Motorists Mutual Insurance Co. v. Hardinger*, 131 F. App'x 823 (3d Cir. 2005), to argue that the "actual presence" or "imminent release" of COVID-19 causes "direct physical loss or damage" to property. Opp'n at 6, 7, 9, 11, 21. But this Court rejects Plaintiffs' interpretation of these cases. The Court holds on the basis of *Port Authority* that COVID-19 does not cause "direct physical loss of or damage to property," *see, e.g., Delaware Valley Mgmt., LLC v. Cont'l Cas. Co.,* 572 F. Supp. 3d 119, 128–32 (E.D. Pa. 2021); *4431, Inc. v. Cincinnati Ins. Comp.,* 504 F. Supp. 3d 368, 383–85 (E.D. Pa. 2020); *Kessler Dental Assocs., P.C. v. Dentists Ins. Co.*, 505 F. Supp. 3d 474, 480 (E.D. Pa. 2020),

and declines to draw analogies between COVID-19 and its purported ability to cause the kind of contamination contemplated by *Port Authority*. *See, e.g.*, *Boscov's Dep't Store, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 546 F. Supp. 3d 354, 364 (E.D. Pa. 2021); *Moody v. Hartford Fin. Grp., Inc.*, 513 F. Supp. 3d 496, 505 (E.D. Pa. 2021).[1]

Moreover, the actual holdings in *Port Authority* and *Hardinger* highlight Plaintiffs' inability to assert a plausible claim. Both cases hold, contrary to Plaintiffs' view, that "physical damage to property means 'a distinct, demonstrable, and *physical alteration*' of its structure." *Hardinger*, 131 F. App'x at 826 n.6 (emphasis added) (quoting *Port Authority*, 311 F.3d at 235). They also hold that claims of "[p]hysical damage to a building as an entity by sources unnoticeable to the naked eye *must meet a higher threshold*." *Id.* (emphasis added). Under that "higher threshold," damage to the property must be "such that its *function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable*." *Id.* (quoting *Port Authority*, 311 F.3d at 236 (emphasis in *Hardinger*)). The threshold is not satisfied if "*[t]he structure continues to function*," even if the insured must address potential sources of damage "as part of routine maintenance." *Port Authority*, 311 F.3d at 236 (emphasis added).[2]

---

[1] Numerous other courts have rejected the comparison between COVID-19 and cases where the property "became practically useless for anything." *Santo's Italian Café, LLC v. Acuity Ins. Co.*, 15 F.4th 398, at 404–05 (6th Cir. 2021) (distinguishing *Port Authority*); *see also 10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 222–23 (2d Cir. 2021) (same).

[2] Notably, other aspects of Plaintiffs' argument belies their purported reliance on *Port Authority* and *Hardinger*. They reject the treatise that both cases cite, and offer dictionary definitions no Pennsylvania federal court has adopted to contest the overwhelming number of cases that require physical alteration of property. Citing zero caselaw, Plaintiffs implore this Court to "not give credence to" 10A COUCH ON INSURANCE § 148:46, even though the Third Circuit expressly endorsed that treatise in both *Port Authority* and *Hardinger*. 311 F.3d at 235; 131 F. App'x at 826 n.6. Likewise, Plaintiffs' reliance on dictionary definitions to bolster their "loss of use" theory directly contradicts the Third Circuit's physical alteration requirement. *See also Spring House Tavern, Inc. v. Am. Fire & Cas. Co.*, 544 F. Supp. 3d 517, 525 (E.D. Pa. 2021) ("[F]ollowing the relevant decisions in this Circuit, we conclude that Plaintiff's proffered interpretation … to include

Here, far from alleging facts to show that their properties' function was "nearly eliminated or destroyed," Plaintiffs merely allege a temporary loss of "*part* of their functionality," FAC ¶ 8, before resuming operations "*at full capacity*." *Id.* ¶¶ 80–97. Since Plaintiffs' "structure continues to function," *Port Authority* forecloses their claim. And the contrast with *Hardinger*, where a family "vacated the premises" after "experiencing infections, as well as respiratory, viral, and skin conditions," as a result of well water "contaminated with e-coli bacteria," 131 F. App'x at 824, could not be more striking. Plaintiffs do not come close to meeting the Third Circuit's minimum test for "direct physical loss or damage" to property, much less the "higher threshold" for "sources unnoticeable to the naked eye."[3]

**B.   The Case Law Plaintiffs Cite Does Not Help Them.**

After attempting to rewrite Third Circuit precedent, Plaintiffs next try to erase the overwhelming weight of on-point authority in this Court and across the federal judiciary, arguing that the complaints in "most" of these cases "have not specifically pled the actual physical presence of COVID-19." Opp'n at 11. Plaintiffs ask the Court to consider instead some outlier decisions that go the other way. Plaintiffs' arguments simply highlight why their claims are baseless.

To begin with, Plaintiffs ignore all but one of this Court's decisions, as well as other federal district court and appellate decisions, cited in Federal's opening brief, which reject claims alleging "the actual physical presence of COVID-19." *See* Mot. at 15–17 (citations omitted). Of the numerous cases Federal cited, Plaintiffs mention only *Moody*, arguing it "confined its 'physical

---

the loss of use of the property is not a reasonable alternative interpretation ... [and] does not control our analysis.").

[3] Plaintiffs' argument that *Port Authority*, and the Loss or Prevention Expenses and the Prohibition of Access Coverage provisions of the Policy, allow coverage "for not just direct physical loss, but the 'imminent' threat of direct physical loss or damage," Opp'n at 21, also fails. As this Court succinctly puts it:   "If the *presence* of COVID-19 does not cause physical loss of or damage to property, the *threat* of COVID-19 certainly does not cause such loss or damage." *Big Red Mgmt. Corp. v. Zurich Am. Ins. Co.*, 2022 WL 79623, at *5 (E.D. Pa. Jan. 7, 2022).

loss or damage' analysis of COVID-19 to surfaces, not airspace." Opp'n at 8 n.2. Yet *Moody* rejected the very premise of Plaintiffs' "actual presence" theory. There, as here, the insureds' admitted ability to reopen "demonstrates that the government orders addressing the virus rather than the virus itself was the source seriously affecting the property's functionality." 513 F. Supp. 3d at 506–07.[4] Further, this Court's repeated recognition that the "actual presence" of COVID-19 does not cause "physical loss or damage" to property under the "'natural, plain, and ordinary sense' meaning" of that phrase, *Whiskey Flats Inc. v. Axis Ins. Co.*, 519 F. Supp. 3d 231, 236 (E.D. Pa. 2021), leaves no room for Plaintiffs' contrary argument.

With no answer to this caselaw, Plaintiffs instead direct the Court to decisions of this Court, and of the U.S. Court of Appeals for the Eighth and Ninth Circuits, which *distinguish* cases alleging the presence of COVID-19. These citations are, at best, misleading. For example, Plaintiffs cite *Chester County Sports Arena v. Cincinnati Specialty Underwriters Ins. Co.*, 530 F. Supp. 3d 546, 554 (E.D. Pa. 2021), Opp'n at 8, but there Judge Baylson specifically rejected as "unpersuasive" the very ruling, *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D.

---

[4] Plaintiffs' stated ground for distinguishing *Moody* also fails, as Plaintiffs offer no plausible response to the Policy's clear statement that it does not cover "air" in the first place. *See* Mot. at 17 n.7; Opp'n at 11 n.4. In any event, Plaintiffs' FAC admits they can clean air just as they clean surfaces. *See* FAC ¶ 50 (Plaintiffs "add[ed] portable air cleaners that use high-efficiency particle air filters to enhance air cleaning and ultraviolet germicidal irradiation as a supplemental treatment to inactivate the virus"); *id.* ¶ 119 (Plaintiffs installed "two air sanitizers," replaced "the roof top air handler" and made "air filter changes"). Plaintiffs contend that their own admissions as to the effectiveness of cleaning create a "factual dispute," citing their separate allegations that Plaintiffs cannot "repair or remediate the actual physical and tangible alteration to property caused by the coronavirus and/or COVID-19[.]" Opp'n at 17 (citing FAC ¶ 55). But these purported "direct contradictions" are "legal conclusions" and "mere conclusory statements" that are not credited on a motion to dismiss. *See Star Buick GMC v. Sentry Ins. Grp.*, 541 F. Supp. 3d 582, 587 (E.D. Pa. 2021); *Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, 537 F. Supp. 3d 780, 786 (E.D. Pa. 2021).

Mo. 2020), that Plaintiffs imply he endorsed. 530 F. Supp. 3d at 554.[5] Plaintiffs' Eighth and Ninth

Circuit citations also do not advance their cause. Both Circuits (as well as the First, Sixth and

Seventh Circuits, among others) expressly reject Plaintiffs' "actual presence" theory. *Torgerson*

*Props., Inc. v. Cont'l Cas. Co.*, 38 F.4th 4, 5 (8th Cir. 2022); *Circus Circus LV, LP v. AIG Specialty*

*Ins. Co.*, 2022 WL 1125663, at *1–2 (9th Cir. Apr. 15, 2022).

Straining to support that theory, Plaintiffs cite outlier decisions from some Pennsylvania

common pleas judges, and state and federal courts elsewhere. Opp'n at 9–15.[6] As to the former,

this Court and other Pennsylvania federal courts find those decisions not persuasive and contrary

to the Third Circuit precedent. *See, e.g.*, *Spring House Tavern*, 544 F. Supp. 3d at 524 (declining

to follow *Ungarean v. CNA*, 2021 WL 1164836 (Pa. Ct. Com. Pl. Mar. 25, 2021)); *Hair Studio*

*1208*, 539 F. Supp. at 419 (declining to follow *Taps & Bourbon on Terrace, LLC v. Certain*

*Underwriters at Lloyds London*, 2020 WL 6380449 (Pa. Ct. Com. Pl. Oct. 26, 2020)); *State St. Rest.*

*Grp. v. Cincinnati Cas. Co.*, 2021 WL 7967680, at *5 (M.D. Pa. Nov. 15, 2021) (declining to

follow *Brown's Gym, Inc. v. Cincinnati Ins. Co.*, 2021 WL 3036545 (Pa. Ct. Com. Pl. July 13,

2021)).[7]

---

[5] The only other decision from this Court that Plaintiffs bother to cite, *Susan Spath Hegedus, Inc. v. Ace Fire Underwriters Ins. Co.*, 538 F.Supp.3d 457, 469 (E.D. Pa. May 7, 2021), contradicts Third Circuit and this Court's precedent, and has not been followed for that reason. *Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*, 539 F. Supp. 3d 409, 418 n.4 (E.D. Pa. 2021).

[6] This Court also has easily dispensed with Plaintiffs' bewildering theory that *Friends of DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020), has any bearing on this insurance coverage dispute. *Clear Hearing Sols., LLC v. Cont'l Cas. Co.*, 513 F. Supp. 3d 566, 576 (E.D. Pa. 2021) (*DeVito* "has nothing to do with property insurance"); *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 549, 559 (E.D. Pa. 2021) (same).

[7] Another case Plaintiffs cite, *Ridley Park Fitness, LLC v. Philadelphia Indem. Ins. Co.*, 2020 WL 8613466 (Pa. Ct. Com. Pl. Oct. 20, 2020), also contains no substantive analysis. And, *SWB Yankees, LLC v. CNA Fin. Corp. et al.*, 2021 WL 3468995, at *2 (Pa. Ct. Com. Pl. Aug. 4, 2021), rests on caselaw like *Studio 417, Brown's Gym* and *Ungarean* that this Court and other Pennsylvania Federal District Courts decline to follow.

The non-Pennsylvania cases Plaintiffs cite are either distinguishable, contrary to Pennsylvania authority, or both. For example, in *Tapestry Inc. v. Factory Mut. Ins. Co.*, 2022 WL 1227058 (D. Md. Apr. 25, 2022), the court held, contrary to Plaintiffs' position, that "'physical loss or damage' to a 'property' requires tangible damage to a structure or a tangible object within a property." *Id.*, at *3. But the court noted that the policy language at issue in that case was "meaningfully distinguishable" from the "narrower … terms of the Policies"—like Plaintiffs' Policy here—that require "direct physical loss or damage." *Id.*[8]

The other non-Pennsylvania cases Plaintiffs cite use distinguishable broader policy language that expressly extends to "communicable disease." *See, e.g.*, *Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*, 2021 WL 1851030, at *3 (E.D. Tex. May 5, 2021) ("Cinemark's Policy is much broader … and expressly covers loss and damage caused by 'communicable disease.'"); *Live Nation Ent. Inc. v. Factory Mut. Ins. Co.*, 2022 WL 390712, at *7 (C.D. Cal. Feb. 3, 2022) (same).[9] Those cases also either represent or rely on authority that this Court and other Pennsylvania district courts declined to follow. *See, e.g.*, *Hair Studio 1208*, 539 F. Supp. at 420 n.8 (criticizing *Elegant Massage*); *NeCo, Inc. v. Owners Ins. Co.*, 520 F. Supp. 3d 1175, 1180 (W.D. Mo. Feb. 16. 2021) (following *Studio 417*).

---

[8] Likewise, the Louisiana state appellate decision cited in Plaintiffs' Supplemental Authority, *Cajun Conti, LLC et al. v. Certain Underwriters at Lloyds, et al.*, 2022 WL 2154863 (La. Ct. App., 4th Cir. June 15, 2022), should also be disregarded. ECF No. 40. *Cajun Conti* relied on a prior Louisiana case to hold that the phrase "direct physical loss or damage" does not "requir[e] a tangible or corporeal loss of property or damage." 2022 WL 2154863, *11 (citation omitted). Pennsylvania law rejects that theory.

[9] *Rowan Univ. v. Factory Mut. Ins. Co.*, 2022 WL 515516 at *2 (N.J. Super. Ct. Jan. 24, 2022) (policy covers "Communicable Disease Response" and "Interruption by Communicable Disease"). Plaintiffs highlight *Rowan Univ.* in particular detail, but it is not even good law. New Jersey's Appellate Division unanimously held that "restrictions imposed by [Executive Orders] EOs to curb the COVID-19 pandemic" do not cause "physical loss or damage to" property, thereby overturning *Rowan Univ. MAC Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*, 2022 WL 2196396, at *16 (N.J. Super. Ct. App. Div. June 20, 2022).

### C.      There is No Basis for Further Amendment or Discovery.

There is simply no path forward for Plaintiffs' claim.[10] Plaintiffs offer to add allegations about the "prevalence" and "transmission rates of COVID-19," and about the need for "sophisticated HVAC and ventilation systems," but no such allegations can change the overwhelming authority that COVID-19 does not cause "direct physical loss or damage" to property, period. Consistent with this Court's other recent decisions, Plaintiffs' FAC should be dismissed with prejudice as further amendment would be futile. *Isaac's Deli, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 539 F. Supp. 3d 424, 435 (E.D. Pa. 2021); *Round Guys Brewing Co. v. Cincinnati Ins. Co.*, 2021 WL 4306027, at *4 (E.D. Pa. Sept. 22, 2021).

### III.    CONCLUSION

For the reasons set forth above and in Federal's opening brief, entry of judgment on the pleadings for Federal is warranted.

 Dated:  July 27, 2022                                   Respectfully submitted,

David Newmann (No. 82401)
david.newmann@hoganlovells.com
Jasmeet K. Ahuja (No. 322093)
jasmeet.ahuja@hoganlovells.com
Jason M. Russell (No. 325963)
jason.russell@hoganlovells.com
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267) 675-4600

*Attorneys for Defendant Federal Insurance Company*

---

[10] Plaintiffs concede their bad faith claim has no merit because they did not even respond to Federal's arguments about that deficient claim in their Opposition. Accordingly, Plaintiffs' bad faith claim must be dismissed. *Jacobs v. Mayorkas*, 2021 WL 1979436, at *1 (E.D. Pa. May 18, 2021) (citing *Celestial Cmty. Dev. Corp. v. City of Phila.*, 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012)) ("To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested.").

**<u>CERTIFICATE OF SERVICE</u>**

I, David Newmann, hereby certify that, on July 27, 2022, I caused the foregoing Reply Brief in Further Support of its Motion to Dismiss Plaintiffs' First Amended Complaint to be electronically filed with the Clerk of the U.S. District Court for the Eastern District of Pennsylvania using the CM/ECF system, which will send notification of such filing to all counsel of record.

David Newmann