IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEYSTONE SPORTS AND ENTERTAINMENT LLC,** *et al.* <br><br> *Plaintiffs,* <br><br> v. <br><br> **FEDERAL INSURANCE COMPANY** <br><br> *Defendant*. | No. 2:21-cv-00609-JRP <br><br> **ORAL ARGUMENT REQUESTED** |

## JOINT STATUS REPORT

Plaintiffs Keystone Sports and Entertainment LLC, FC Pennsylvania Stadium LLC, Pennsylvania Professional Soccer LLC, Rivertown Developers, L.P., Rivertown TCI, L.P., and KSE U2 LLC ("Plaintiffs"), and Defendant Federal Insurance Company ("Federal") (collectively with Plaintiffs, the "Parties"), hereby provide this Joint Status Report as to the impact of *Wilson v. USI Insurance Services, LLC*, — F.4th — , 2023 WL 116809 (3d Cir. Jan. 6, 2023) ("*Wilson*") in accordance with the Court's Order dated August 24, 2022.

**PERTINENT BACKGROUND**

Plaintiffs filed the operative First Amended Complaint ("FAC") on March 3, 2022 (ECF No. 32). Thereafter, over Plaintiffs' objections, the Court stayed discovery in this matter pending resolution of Federal's then-forthcoming Motion to Dismiss (ECF No. 34). Defendant Federal filed its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on April 4, 2022 (ECF No. 35). Plaintiffs, in turn, opposed the motion on May 2, 2022 (ECF No. 38). Federal sought leave to file a Reply in Further Support of its Motion to Dismiss on May 6, 2022 and, with leave of Court and the consent

of counsel for Plaintiffs, filed the Reply on July 27, 2022 (ECF No. 43). On August 10, 2022, Plaintiffs filed a motion to stay litigation pending resolution of a controlling ruling from the Supreme Court of Pennsylvania (ECF No. 44). Defendant Federal opposed the stay (ECF No. 45). On August 24, 2022, the Court granted the motion insofar as the stay request concerned the Third Circuit's resolution of the fourteen appeals consolidated under the lead case of *Wilson v. USI Insurance Services, LLC*, No. 20-3124 (3d Cir.), and denied Plaintiffs' request that the stay continue until the Pennsylvania Supreme Court issues a controlling ruling. (ECF No. 46). The Order staying the case instructed the parties to provide the Court with the instant status report addressing the impact of the Third Circuit's decision on Defendant's Motion to Dismiss within 14 days of the decision. *See id.*

**THE PARTIES' RESPECTIVE POSITIONS REGARDING THE IMPACT OF *WILSON***

**A.   PLAINTIFFS' POSITION**

**1.   *Wilson* Addresses Issues of Fact that Differ from those Raised by Plaintiffs.**

In *Wilson*, COVID-19 business interruption matters of fourteen different businesses were consolidated on appeal to the United States Court of Appeals for the Third Circuit in *Wilson.* These businesses operated out of Pennsylvania, New Jersey, New York, Maryland and Delaware in the food service, medical health and wellness, art, music, and legal sectors. *Id.* at *1. Specifically, the appellants were a catering business, an eye care center, an entertainment production company, several restaurants, taverns, bars, event centers (and their operators), a restaurant group, a law office, an art gallery, an optician's office, and a hearing center. *Id.* Each of the appellant businesses either closed or significantly limited their operations after the governors of their respective states issued orders to curb the spread of COVID-19. *Id.* Yet, none of those businesses owned or operated a major league soccer team such as the Philadelphia Union that hosts home games at an 18,500-

seat stadium such as Subaru Park where crowds gather thousands at a time, or the owners of a training field and facility and office building out of which a major league soccer team such as the Philadelphia Union practices. Likewise, none of the businesses alleged that their functionality was nearly eliminated or destroyed due to the actual or imminent risk that COVID-19 would be present to such an extent as to make their properties either unsafe or uninhabitable.

In its ruling in *Wilson*, the Third Circuit determined that none of the appellants alleged a "physical loss of or damage to" property under the business income, extra expense, or civil authority provisions of their commercial property insurers' policies so as to trigger coverage related to the loss of use of the insured properties in response to the COVID-19 Closure Orders. *Id.* at *7. Upon consideration of *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002) and *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-cv-04418, 2014 WL 6675932 at *6 (D.N.J. Nov. 25, 2014), the Third Circuit held that the actual or suspected presence of the coronavirus on the insured premises, ***alone***, does not constitute a loss. *Id.* at *7 (emphasis added). However, the Third Circuit recognized that, under *Port Authority*, "there is no physical loss ***until*** the substance is 'in such form or quantity as to make the building unsafe.'" *Id.* The Third Circuit further recognized: "And here, no business alleged that the coronavirus was present in its property in such a form or quantity as to make the property dangerous and uninhabitable." *Id.* at *7. No threat of such a release was pled either. For these reasons, the Third Circuit determined that the appellants did not meet their burden of establishing a valid claim for coverage. *Id.* at *8.

By contrast, in their FAC, Plaintiffs explain that their "business is conducted in Subaru Park, an 18,500-seat stadium located at One Stadium Drive, Chester, Pennsylvania 19013; the training fields immediately outside of Subaru Park; the Training Facility located at 2525 Seaport

Drive, Chester, Pennsylvania 19013; and an office building located at 2501 Seaport Drive, Chester, Pennsylvania 19013." *See* FAC, ECF No. 32, at ¶2. In no uncertain terms, they allege that "COVID-19 has physically infested the Insured Locations." *Id.* at ¶6. Likewise, "[a] physical virus was present in and around Plaintiffs' facilities, impairing the function for the Covered Properties ordinary and intended uses, forcing their closure, and requiring steps to be taken to physically restore the facilities to a usable state." *Id.* at ¶11. "[D]roplets and aerosols containing coronavirus spread from infected individuals to surfaces and the HVAC systems throughout the Insured Premises, thereby causing physical damage and alteration to property and harming the air quality therein." *Id.* at ¶74. "Because of the spread and/or presence of COVID-19, the functional spaces in Subaru Park and the other Insured Premises was diminished." *Id.* at ¶105.

Plaintiffs further alleged that "[d]ue to the extreme threat posed by COVID-19, Major League Soccer suspended all league and team activities on March 12, 2020." *Id.* at ¶75. Due to the confirmed COVID-19 cases and the presence of the coronavirus, it became necessary to close Subaru Park and subsequently to operate at significantly reduced capacity. *Id.* at ¶¶76-78. Further, to repair the physical loss or damage resulting from the intrusion of COVID-19 on the surfaces and in the air caused by COVID-19, Plaintiffs made numerous physical and/or structural alterations to Subaru Park and the Insured Locations including the repurposing of the locker rooms, suites, and press boxes, the implementation of hands-free operations and installation of sanitizing areas. *Id.* at ¶¶112-115. Significantly, at paragraph 139, Plaintiffs specifically alleged that "[t]he physical losses to Plaintiffs' properties include without limitation the rendering of the insured property from a satisfactory state to a state dangerous and/or unsatisfactory for use because of the fortuitous presence and effect of the coronavirus, fomites, and respiratory droplets or nuclei upon the property." *Id.* at ¶139.

### 2. The Third Circuit in *Wilson* Recognized Plaintiffs' Theories of Liability as Valid.

*Wilson* is not dispositive of the issues in this matter for several reasons. First, the insured properties of the appellants in *Wilson* were not subject to the same actual and ongoing imminent risks posed by COVID-19 that Plaintiffs' Covered Properties were here because of the fundamental differences in the nature of Plaintiffs' operations at Subaru Park and its training facilities. Second, Plaintiffs' have articulated allegations regarding the elimination of the functionality of the Covered Properties as a direct result of the actual and imminent risk COVID-19 posed. Additionally, the cause of the alleged losses in *Wilson* was the government closure orders as opposed to the primary cause of loss alleged here—the actual and imminent threat of the presence of the virus that effectively rendered the Covered Properties unsafe and dangerous for habitability. *Wilson*, 2023 WL 116809 at *1.

In deciding whether *Wilson* is applicable here, Plaintiffs encourage the Court to strongly consider the specific facts surrounding the circumstances for which Plaintiffs seek to recover for their loss of business income. Here, Plaintiffs rely upon tens of thousands of fans gathering at one time (and hundreds of thousands of fans over the course of a season) to observe the Philadelphia Union play live soccer games. *See* FAC, ECF No. 32, at ¶4. Naturally, during home games at Subaru Park, fans scream and cheer for the Philadelphia Union together in tight crowds. For Plaintiffs, the ability for the respiratory droplets to have expelled in large quantity and/or form and substantially change the object, surfaces, and air of the Covered Properties if they were to remain open was both imminent and real. *See id.* at ¶120. Thus, the fundamental difference between the actual and imminent physical loss or damage in this matter and that alleged in *Wilson* is substantial. Nowhere in *Wilson* did the Third Circuit address how crowds gathering, tens of thousands at time, could have utterly eviscerated the functionality of the insured properties. Therefore, the undeniable

and substantial differences between Plaintiffs' alleged physical loss or damage and the loss alleged by the appellants in *Wilson* removes the force and effect of *Wilson* here.

The Third Circuit in *Wilson* held that the "businesses therefore must show that the functionalities of their properties were nearly eliminated or destroyed such that the structures were made useless or uninhabitable, or that that there was an imminent risk of either of those things happening." *Wilson*, 2023 WL 116809 at *4. The Third Circuit further explained that **"[n]o business alleged that the coronavirus was present in its property in such form or quantity as to make the property dangerous and uninhabitable."** *See id.* at *7 (emphasis added). Here, however, Plaintiffs specifically plead that their functionality was impaired to such a great extent that, before Subaru Park, the Training Fields and Facility and Office Building were reopened, remediation efforts had to be taken to remove the disease and restore the Covered Properties to their functional state. *See id.* at ¶103. The FAC does not speak to the precise amount of COVID-19 that was and would have been imminently present (both on the surfaces *and in the air*) because those are issues of fact that must be explored in discovery. Yet, Plaintiffs unequivocally assert that "[a]lthough not noticeable to the naked eye, COVID-19 rendered the covered properties uninhabitable, highly dangerous to use and nearly eliminated or destroyed their functionality." *See id.* at ¶136. Hence, in reading the FAC as a whole, the instrumentality that is alleged to pose an actual and imminent risk of altering the Covered Properties, albeit at a molecular level that cannot be seen, and to have "nearly eliminated" their functionality, is undoubtedly COVID-19.

Finally, the cause of loss alleged draws an important distinction between this case and *Wilson*. While in *Wilson* the primary cause of loss alleged was the government closure orders, Plaintiffs allege that their losses were caused by the actual and ongoing and imminent threat of the presence of the virus rendering the Covered Properties dangerous and unsafe. When these

allegations are accepted as true, Plaintiffs have stated viable claims for physical loss or damage warranting discovery and the denial of Defendant's Motion.[1]

## B. DEFENDANT FEDERAL'S POSITION

The Third Circuit's precedential decision in *Wilson v. USI Insurance Service LLC* confirms that Federal's pending Motion to Dismiss Plaintiffs' First Amended Complaint should be granted. There is simply no path forward for Plaintiffs' claims.

As explained in Federal's brief in support of its Motion to Dismiss (at pgs. 11–14), Plaintiffs fail to state a claim because loss of use caused by the COVID pandemic and related public health orders is not "direct physical loss or damage to" property. ECF 35-1. The Third Circuit unequivocally agreed, finding that "loss of use caused by government edict and untethered to the physical condition of the premises is not a physical loss or damage to the properties." *Wilson*, 2023 WL 116809 at *5. Federal also explained in its brief that Plaintiffs' allegations that COVID was present on the property failed to establish "direct physical loss or damage," and, in any event, COVID's presence on the property did not cause Plaintiffs' alleged damages. ECF 35-1 at 15–17. The Third Circuit resoundingly agreed, concluding that "the presence of a dangerous substance alone does not constitute a loss; there is no physical loss until the substance is 'in such form or quantity as ***to make the building unusable***.'" *Wilson*, 2023 WL 116809 at *7 (quoting *Port Authority of N.Y & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (emphasis added)).

---

[1] Plaintiffs respectfully disagree with Defendants' characterization at page 9 herein of their arguments as "deceptive" and "specious" when there are specific allegations pled that COVID-19 rendered the covered properties uninhabitable and highly dangerous. *See e*.g., FAC, ECF No. 32, at ¶103.

Remarkably, Plaintiffs argue that the Third Circuit's rejection of the "actual presence" theory helps their position because "the insured properties of the appellants in *Wilson* were not subject to the same actual and ongoing imminent risks posed by COVID-19 that Plaintiffs' Covered Properties were." According to Plaintiffs, the Third Circuit's determination that none of the businesses in *Wilson* sufficiently "alleged that the coronavirus was present in its property in such a form or quantity as to make the property dangerous and uninhabitable" endorses their misguided theory of liability. *Wilson*, 2023 WL 116809 at *7. Plaintiffs completely mischaracterize the Third Circuit's holding in *Wilson*, as their argument implies that stronger COVID-related allegations would be enough to survive dismissal. That is not correct. The Court was simply acknowledging that it is not plausible to allege that the presence of COVID on the property was the cause of the insureds' alleged losses—rather, it was the governmental orders.

The same is true here. The fact that Plaintiffs reopened Subaru Park ***to full capacity as soon as the public health orders were lifted***, ECF 32 ¶¶ 80-97, defeats any arguments Plaintiffs may now try to make to resuscitate their claims. While Plaintiffs contort themselves to argue that the primary cause alleged here was "the actual and imminent threat of the presence of the virus that effectively rendered the Covered Properties unsafe and dangerous for habitability," the argument is untenable. According to their own attendance data, Plaintiffs reopened Subaru Park to one of their largest home crowds ever on December 5, 2021, ECF 35-1 at 17, when the Omicron variant of the virus was at its height in the Philadelphia region. As the Third Circuit noted, conclusory allegations like these are no different from the "[r]estaurants [that] remained open for carry out" and the "medical providers [that] could perform emergency procedures." *Wilson*, 2023 WL 116809 at *5.

In sum, Plaintiffs' purported grounds for distinguishing the Third Circuit's decision in *Wilson* are specious and contrary to the whole spirit of the Third Circuit's decision to consolidate 14 appeals in Pennsylvania and New Jersey and to stay numerous other similar appeals pending resolution of *Wilson*. The Court would not have undertaken this effort if, as Plaintiffs contend, the effect of the ruling could be easily circumvented by making marginally different (or, worse, deceptive) allegations. For these reasons and those stated in Federal's brief in support of its motion to dismiss, and its reply brief, Federal's Motion to Dismiss Plaintiffs' First Amended Complaint should be granted with prejudice.

Dated: January 20, 2023

| | |
|---|---|
| */s/ Marni S. Berger* | */s/ David Newmann* |
| Marni S. Berger | David Newmann |
| SALTZ MONGELUZZI & BENDESKY P.C. | HOGAN LOVELLS US LLP |
| One Liberty Place, 52nd Floor | 1735 Market Street, 23rd Floor |
| Philadelphia, PA 19103 | Philadelphia, PA 19103 |
| (215) 575-2998 | (267) 675-4600 |
| | |
| *Counsel for Plaintiffs* | *Counsel for Defendant Federal Insurance Company* |

## **CERTIFICATE OF SERVICE**

I hereby certify on behalf of the parties that on this 20th day of January 2023, a true and correct copy of the foregoing Joint Status Report was filed electronically via the ECF filing system and was served electronically on all counsel of record.

/s/ David Newmann